232 N.J. Super. 205 (1989)
556 A.2d 1247
JOHN G. VAN DALEN, ON HIS OWN BEHALF AND AS CO-TRUSTEE WITH JOHN P. CHESTER OF CHESTER AND VAN DALEN ASSOCIATES, INC. EMPLOYEES' RETIREMENT TRUST, CHESTER AND VAN DALEN ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
WASHINGTON TOWNSHIP, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY LOCATED IN MORRIS COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1989.
Decided April 12, 1989.
*206 Before Judges ANTELL, DREIER and BROCHIN.
Carl S. Bisgaier argued the cause for appellant (Bisgaier & Pancotta, attorneys; Carl S. Bisgaier and Frederick W. Hardt, on the brief).
Debra K. Donnelly argued the cause for respondent Washington Township (Villoresi, Jansen and Shaw, attorneys; Debra K. Donnelly, on the brief).
Donald M. Palombi, Deputy Attorney General, argued the cause for respondent Council on Affordable Housing (Donald R. Belsole, Acting Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Donald M. Palombi, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Plaintiff is the owner of 127 acres of land in Washington Township. He appeals from a resolution of the Council on Affordable Housing (COAH) dated February 16, 1988, which grants substantive certification of defendant's housing element and fair share plan pursuant to the Fair Housing Act, N.J.S.A. 52:27D-314. The resolution, passed pursuant to an opinion dated January 4, 1988, approved for inclusionary development a 500-acre site which failed to encompass plaintiff's land. On this appeal, plaintiff challenges COAH's action on the ground that it denied him a builder's remedy within the meaning of Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158, 279-280 (1983) (Mount Laurel II), and refused to allow his challenge to defendant's "growth area" delineation in its petition for substantive certification.
*207 When the Supreme Court filed its opinion in Mount Laurel II on January 20, 1983, plaintiff had a use variance application pending before defendant Washington Township's Zoning Board of Adjustment. That application was denied in March 1983, and on July 15, 1983, plaintiff filed a Superior Court complaint against defendant which challenged the constitutionality of its land use ordinance and sought a builder's remedy under Mount Laurel II.
From February 1 to February 9, 1984, plenary hearings were held to determine whether a State Development Guide Plan (SDGP) growth area existed in the Township to help define the nature and extent of defendant's regional fair share obligation. On February 9, 1984, the Law Division ruled that a growth area was located within the Township and delineated the area to be included among the factors which go into formulating defendant's fair share obligation.
On June 11, 1984, a hearing was held to determine defendant's fair share obligation and its compliance therewith. On December 6, 1984, the court assessed defendant's fair share at 227 units and held that its land use scheme failed to comply with Mount Laurel II. The court allowed defendant 90 days to submit revisions of its land use regulations and appointed a master to assist the municipality in rezoning to conform with the court's order and to report to the court with respect to granting plaintiff a builder's remedy. The opinion of the Law Division is reported at 205 N.J. Super. 308 (Law Div. 1984).
On July 2, 1985, the Fair Housing Act was adopted and on July 12, 1985, defendant moved thereunder to have the case transferred to COAH. The master's report was filed on August 9, 1985. Although the Law Division denied defendant's transfer motion on October 25, 1985, it reconsidered on April 2, 1986, and, pursuant to Hills Dev. Co. v. Bernards Tp. in Somerset Cty., 103 N.J. 1 (1986), transferred the case to COAH. We affirmed the Law Division's decision to transfer *208 the matter to COAH and the Supreme Court denied certification on January 20, 1988.
In the interim, on January 5, 1987, defendant filed its housing element and fair share plan with COAH pursuant to the Fair Housing Act, and on January 16, 1987, published notice of its petition for substantive certification pursuant to N.J.S.A. 52:27D-313. Plaintiff filed its objection to defendant's petition on March 2, 1987, and COAH thereafter initiated the mediation and review process between the parties pursuant to N.J.S.A. 52:27D-315.
On June 30, 1987, COAH, in a letter written to plaintiff's counsel, indicated it would not consider plaintiff's challenge to the "growth area" delineation. Finding mediation efforts unsuccessful, on June 22, 1987, COAH, pursuant to N.J.S.A. 52:27D-315c, transferred the matter to the Office of Administrative Law as a contested case. On July 31, 1987, the Administrative Law Judge (ALJ), in an initial decision, concluded that plaintiff was not entitled to a builder's remedy.
On August 2, 1987, COAH heard oral arguments regarding plaintiff's motion for "prioritization" of his site or other appropriate site-specific relief. In its written opinion of January 4, 1988, COAH denied plaintiff's motion and concluded that a builder's remedy would only be awarded where the municipality's actions frustrated COAH's "statutory obligation to ensure the creation of a realistic and workable plan."
With respect to plaintiff's appeal from the COAH resolution under review, to the extent that it denies plaintiff a builder's remedy, the resolution is affirmed substantially for the reasons stated in COAH's written opinion of January 4, 1988. See also Hills Dev. Co. v. Bernards Tp. in Somerset Cty., 103 N.J. 1, 55 (1986) ("No builder with the slightest amount of experience could have relied on the remedies provided in Mount Laurel II in the sense of justifiably believing that they would not be changed, or that any change would not apply to the builders.").
The position taken by COAH in its letter of June 30, 1987, to plaintiff's counsel was that it would "not entertain arguments *209 regarding the extent of the growth area as established in the [State Development Guide Plan of May 1, 1980] cited above." The SDGP was promulgated in 1980 pursuant to N.J.S.A. 13:1B-15.52. Mt. Laurel II, 92 N.J. at 225. It reflected the official determination, by the Department of Consumer Affairs, Division of State and Regional Planning, of the State's planning goals and objectives in terms of future growth and development. A master plan was developed, consisting of the SDGP and concept maps which were drawn to illustrate how every municipality is classified in terms of growth, limited growth, agriculture, conservation, pinelands or coastal zone. Development was contemplated for areas characterized as "growth." Id. at 225-228.
In Mount Laurel II, the Supreme Court found that the SDGP provided a satisfactory approach to determining the extent of a municipality's fair share obligation. 92 N.J. at 225. The Court carefully noted, however, that it had "decided not to make the SDGP the absolute determinant of the locus of the Mount Laurel obligation." Id. at 239. Its withholding of conclusive effect to the SDGP was based on the fact that the Legislature had not expressly authorized its use for Mount Laurel purposes "nor mandated that the actual use of land, as permitted in zoning ordinances, conform to the SDGP." Ibid. It added the following:
Given these circumstances, we deem it prudent to allow parties to attempt to persuade the trial court, in a particular case, that the SDGP should not determine whether the Mount Laurel doctrine applies to the particular municipality involved in the case. While we believe important policy considerations are involved in our decision not to make the SDGP conclusive, we think it even more important to point out that it will be the unusual case that concludes the locus of the Mount Laurel obligation is different from that found in the SDGP. [Id. at 239-240].
It then stated that any litigant challenging the SDGP locus of a Mount Laurel obligation would have to prove one of three specified exceptions. The third exception, made applicable only if the concept map was not revised before January 1, 1985, was where, subsequent to the date of the Mount Laurel II decision, "the municipality, containing no `growth area,' encourages or *210 allows commercial, residential or industrial development or, if it contains some `growth area,' encourages or allows development outside of that area." Id. at 240-241. It enlarged thereon in the following language:
The third exception recognizes that if the planning process does not remain a continuing one, the categories set forth in the SDGP might become unrealistic and certainly would lose a considerable degree of their legitimacy. It is one thing for a court to defer to the judgment of the planners, even where it disagrees; it is another to defer to a document that is clearly out of date where deferral might frustrate a constitutional obligation. In order for it to remain a viable remedial standard, we believe that the SDGP should be revised no later than January 1, 1985 (and, in the absence of proof of a more appropriate period, every three years thereafter). If it is not, then courts shall have considerable discretion to vary the locus of the Mount Laurel obligation from that shown on the present SDGP concept map. [Id. at 242].
It supplemented this with the following footnote on the same page:
We will continue to rely on revisions of the SDGP as long as the procedures by which it is amended and the substantive recommendations it contains demonstrate that it is a sound planning document. Given the significance this opinion attributes to the SDGP, it becomes even more important that the state authorities responsible for it continue to act on the basis of sound planning principles. Failure to do so would not only have adverse consequences for the state, but would cause us to reconsider use of the SDGP as a remedial guide to the Mount Laurel obligation. [Ibid. n. 16].
When the Supreme Court originally sanctioned use of the SDGP, it did so for lack of an existing, more definitive methodology. But the SGDP, which had never been revised, was repealed by L. 1985, c. 398, § 18, effective January 2, 1986, to be replaced under the State Planning Act by the newly created State Planning Commission's State Development and Redevelopment Plan (SDRP). N.J.S.A. 52:18A-199. The SDRP was to be completed within 18 months of its enactment. Id. Some 23 months thereafter, the time limitation was extended an additional 18 months to January 2, 1989. L. 1987, c. 308, § 1, effective December 9, 1987. As of this date, the Commission has yet to adopt the SDRP, although it is expected that this will be accomplished in 1993.
We are satisfied that plaintiff does not assail the reasonableness of COAH's determination to utilize the SDGP, *211 so long as it is treated as only one factor among others in its allocation methodology. In plaintiff's words, however, what is at issue is "COAH's rigidity in not permitting any party to challenge the reasonableness of a particular SDGP designation as applied to a given municipality." Plaintiff intends to show, if allowed a hearing before COAH, that a significant enlargement of the infrastructure and of utility franchises into an area west of Washington Township and onto the Schooley's Mountain plateau increases the size of defendant's growth area so as to work a significant alteration of its fair share allocation. From our review of the history and limitations of the SDGP as perceived by the Supreme Court, we have no doubt that plaintiff should be allowed an opportunity to question its reliability as a planning tool in this particular instance. Factual questions concerning delineation of defendant's growth area are projected herein which require resolution either by mediation or by COAH after adjudication in the Office of Administrative Law. See Hills Development v. Bernards Tp., 229 N.J. Super. 318, 341 (App.Div. 1988) (citing N.J.A.C. 5.91-7.3(b) and 5:91-8.1(a)).
The resolution granting substantive certification is vacated and the matter is remanded to COAH for further proceedings consistent with this opinion.