243 N.J. Super. 157 (1990)
578 A.2d 1241
ALEXANDER'S DEPARTMENT STORES OF NEW JERSEY, INC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
BOROUGH OF PARAMUS, NEW JERSEY, THE NEW JERSEY COUNCIL ON AFFORDABLE HOUSING, ET AL., DEFENDANTS-APPELLANTS.
WESTLAND GARDEN STATE PLAZA L.P. AND WESTLAND PROPERTIES, INC., THIRD-PARTY PLAINTIFFS,
v.
DONALD TRUMP, TRUMP ORGANIZATION, TRUMP ORGANIZATION/ALEXANDER'S AND JOHN DOES 1-10, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1990.
Decided August 8, 1990.
*159 Before Judges MICHELS, R.S. COHEN and BROCHIN.
Gary T. Hall argued the cause for appellant Borough of Paramus, Mayor and Borough Council of Paramus (McCarter & *160 English, attorneys, Alfred L. Ferguson of counsel, Gary T. Hall, Brenda C. Liss and Lisa S. Bonsall on the brief).
Robert S. Raymar argued the cause for respondents Alexander's (Hellring Lindeman Goldstein Siegal Stern & Greenberg, attorneys, Robert S. Raymar, Jonathan L. Goldstein and Heidi H. Hellring of counsel).
Theodore L. Abeles argued the cause for third-party plaintiffs Westland (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys, Theodore L. Abeles of counsel and on the brief).
Joseph L. Yannotti, Deputy Attorney General, argued the cause for appellant New Jersey Council on Affordable Housing (Robert J. Del Tufo, Attorney General, attorney, Mary C. Jacobson, Deputy Attorney General, of counsel, Joseph L. Yannotti and Donald M. Palombi, Deputy Attorney General, on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
Plaintiffs are the owners of commercial land in Paramus. The "Westland" defendants own commercial and residential land in Paramus which lies generally across the highway from plaintiffs'. In 1985, Paramus was a defendant in an exclusionary zoning suit brought by a developer seeking to build low income housing. The Law Division ordered Paramus to rezone to meet its obligation to afford a realistic opportunity for affordable housing. The Fair Housing Act was thereafter enacted, and Paramus sought substantive certification of a proposed housing element and fair share plan from the Council on Affordable Housing. Westland was an objector because the plan located a number of housing units on Westland property.
Westland's objections were resolved in 1987. Paramus made an agreement with Westland to amend its zoning ordinance to allow commercial development more intensive than would otherwise have been permitted in return for the transfer of some *161 $2.5 million and certain acreage from Westland to Paramus. The money and land were to be used for the purpose of helping to satisfy Paramus's Mt. Laurel obligation to provide low and moderate income housing. The agreement was conditioned on substantive certification and enactment by Paramus of zoning ordinance amendments. Paramus submitted the agreement and proposed zoning amendments to the Council on Affordable Housing ("COAH"). After a period of study in which plaintiffs could have participated but did not, COAH granted substantive certification to Paramus's housing element and fair share plan. Paramus then adopted the proposed ordinance changes, and plaintiffs filed their complaint in lieu of prerogative writs. They named Westland, Paramus, its Mayor and COAH as defendants.
Defendants moved to dismiss the complaint on various theories. Some of plaintiffs' claims were dismissed, and plaintiffs have not sought to appeal those rulings. Most of the complaint survived defendants' motions, however, and it is the rulings denying dismissal that are before us. Paramus and COAH separately sought and were granted leave to appeal. We consolidate the appeals for the purpose of decision.
Plaintiffs' complaint is in ten counts and includes a number of attacks: In Count I, it charges that the Paramus-Westland agreement and the zoning amendments are ultra vires and invalid because they are the products of the unlawful sale of commercial zoning to Westland. The second count charges that the agreement and zoning amendments are unlawful because they improperly shift to commercial developers the burden to fund Paramus's Mt. Laurel obligations, and to finance improper offsite improvements. The third count alleges that the agreement and amendments were invalidated by the participation of the Mayor, and his conflict of interest arising out of his brother-in-law's sometime legal representation of Westland and his wife's employment by the brother-in-law. The fourth count attacks the agreement and amendments on the ground that the governing body improperly contractually bound itself *162 in futuro not to alter an agreed zoning scheme. The fifth count charged violations of the Open Meetings Act. It was dismissed by the Law Division, and is not before us. The sixth count charged that the amendments constituted invalid spot zoning by creating a uniquely favorable commercial zone limited to the Westland properties. The seventh count contends that the agreement and ordinance are invalid because they do not, contrary to COAH's substantive certification, provide a realistic opportunity for the construction of affordable housing. The eighth count charged unfair competition and restraint of trade. It was dismissed by the Law Division, and is not before us. The ninth count charged two procedural irregularities. The first was the failure of COAH to refer the proceeding before it, in which plaintiffs did not appear, to the Office of Administrative Law for an evidentiary hearing. This contention was dismissed by the Law Division. The second irregularity was Paramus's failure to present the proposed amendments to the planning board for its review. That contention survived. The tenth and final count charged that the ordinance was invalid because it was vague, inconsistent and ambiguous.
Defendants' motions to dismiss the complaint were argued on various grounds. The gist of their positions before us, however, can be simply stated. They argue that plaintiffs have no standing to maintain this litigation, that they failed to exhaust obligatory administrative remedies, that their claims were addressed to the wrong court, were too late, and were barred by special Mt. Laurel principles of repose. We affirm in part and reverse in part.
Every municipality in New Jersey has the constitutional duty to provide "a realistic opportunity for the construction of its fair share of low and moderate income housing." So. Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 92 N.J. 158, 221, 456 A.2d 390 (1983) ("Mt. Laurel II"). The Supreme Court recognizes lower income persons, public interest organizations representing the interests of lower income persons, and developers offering to build lower income housing as proper plaintiffs in *163 suits charging municipalities with failure to satisfy their constitutional housing responsibilities. Mt. Laurel II, 92 N.J. at 218, 279-281, 337, 456 A.2d 390. Developers were expected to pursue a "builder's remedy," which would permit them to profit from constructing lower income housing while performing the public service of enforcing compliance with municipal Mt. Laurel obligations. Hills Dev. Co. v. Bernards Tp. in Somerset Cty., 103 N.J. 1, 54-55, 510 A.2d 621 (1986) ("Mt. Laurel III").
In response to the Mt. Laurel decisions and the Court's invitation to a legislative initiative, Mt. Laurel II, 92 N.J. at 212-213, 456 A.2d 390, the Fair Housing Act was adopted. L. 1985, c. 222; N.J.S.A. 52:27D-301 et seq. It provides a statutory means to enable each municipality to determine and provide for its fair share of its region's need for low and moderate income housing. It creates COAH and gives it the responsibility of dividing the State into housing regions, ascertaining the housing needs, and developing guidelines for the municipalities to determine their fair share. N.J.S.A. 52:27D-305, 307. It authorizes COAH to determine, if asked, whether a municipality's proposed means of satisfying its Mt. Laurel obligations will in fact do so. N.J.S.A. 52:27D-313, 315; Mt. Laurel III, 103 N.J. at 35-36, 510 A.2d 621. If a municipality elects to notify COAH of its intent to submit its fair share plan and housing element[1] and does submit them before the institution of any "exclusionary zoning litigation," it can gain valuable protection from exclusionary zoning litigation. If a municipality does not take advantage of the mechanisms created by the statute, it foregoes that protection.
If a municipality petitions COAH for substantive certification, N.J.S.A. 52:27D-313, COAH issues a grant if no objection is timely filed, and if the municipality's submittal is consistent with COAH's criteria and makes "the achievement of the municipality's *164 fair share of low and moderate income housing realistically possible." N.J.S.A. 52:27D-314. Timely objection to the municipality's petition for substantive certification triggers the review and mediation process, which will hopefully resolve the objection.[2] If it becomes a contested case, the matter is referred to the Office of Administrative Law for an evidentiary hearing. N.J.S.A. 52:27D-315; 52:14B-1 et seq. See Hills Development v. Bernards Tp., 229 N.J. Super. 318, 336 et seq., 551 A.2d 547 (App.Div. 1988). COAH's decision is made after the Office of Administrative Law issues its initial decision. If COAH grants substantive certification, the municipality has 45 days in which to adopt the approved fair share housing ordinance. N.J.S.A. 52:27D-314.
A plaintiff who files an "exclusionary zoning case" against a municipality which has obtained substantive certification must join COAH as a party, and must face a presumption of validity of the housing element and the ordinance implementing it. The presumption may be overcome only by clear and convincing evidence that the housing element and ordinance do not provide a realistic opportunity for the provision of the municipality's fair share of low and moderate income housing. N.J.S.A. 52:27D-317. In addition, the grant of substantive certification guarantees the municipality a six-year period of repose, during which it is ordinarily immune to exclusionary zoning litigation. N.J.S.A. 52:27D-313, 322; Mt. Laurel II, 92 N.J. 291-292, 456 A.2d 390.

I.
We first determine whether plaintiffs have standing to maintain the present action. We can do that only after examining exactly what their complaint alleges and seeks; there need not be one answer that uniformly disposes of all their claims.
*165 The seventh count plainly asserts that the Westland agreement and the effectuating zoning amendments do not provide a realistic opportunity for the construction of low and moderate income housing. That is the central allegation of an exclusionary zoning action charging a municipality with failure to meet its Mt. Laurel obligations. Plaintiffs, as neighboring landowners and taxpayers, have no standing to make such a claim. In its Mt. Laurel opinions, the Supreme Court has made it very clear that the housing rights of low and moderate income persons can be asserted only by the persons themselves, by public interest organizations representing their interests, and by developers offering to build affordable housing.
Neighbors and taxpayers have never been accorded Mt. Laurel standing. They cannot claim protection against zoning that unconstitutionally deprives others of housing opportunities, and they have an insufficient stake in the outcome of a suit to enforce the Mt. Laurel rights of others. For that reason, the seventh count of the complaint should have been dismissed because plaintiffs did not have standing to maintain it. We do not reach the issue whether the seventh count also falls before the Mt. Laurel six-year period of repose. We also do not decide whether plaintiffs were entitled to appeal COAH's grant of substantive certification after declining to participate in any agency processes.

II.
The remaining counts do not charge Paramus with failing to provide for affordable housing. Instead, they contend that Paramus violated other legal restrictions and principals while ostensibly proceeding toward Mt. Laurel compliance. They charge that Paramus illegally "sold" zoning concessions to gain land and money for the municipality; that it improperly burdened a commercial owner with the cost of affordable housing; that the Mayor's conflict of interest invalidated the agreement and zoning amendment; that the governing body illegally *166 bound itself not to change a zoning plan for a period of time; that there was spot zoning; that the zoning amendment was not referred, as it had to be, to the planning board, and that the ordinance was vague, inconsistent and ambiguous.
Four things characterize these challenges; (1) they do not question Paramus's satisfaction of its Mt. Laurel duties, (2) they are the kinds of attacks on municipal action that neighboring landowners or taxpayers have traditionally made by prerogative writ, (3) they do not directly challenge any decision made by COAH, and (4) many of them concern issues that did not ripen until after COAH granted substantive certification, when the governing body took action on the zoning amendments.
The Fair Housing Act does not diminish the constitutionally protected right to challenge municipal conduct by actions in lieu of prerogative writs. Mt. Laurel III, 103 N.J. at 45, 510 A.2d 621; N.J. Const. (1947) Art. VI, sec. V, para. 4. Such actions challenging municipal action belong in the Law Division. R. 4:69-1. The legislative mandate given COAH does not expressly or implicitly include supplanting the Law Division in such matters.
COAH has important statutory land planning and dispute resolution functions. In fulfilling them, it has incidental jurisdiction to decide legal matters that necessarily arise in the direction and control of its own proceedings. Examples are questions of the scope of its own mission, its power to grant a builder's remedy, and whether, in the course of COAH proceedings, a developer could question the reliability of the State Development Guide Plan in determining the growth area of a municipality. See Van Dalen v. Washington Tp., 232 N.J. Super. 205, 556 A.2d 1247 (App.Div. 1989). Other examples are the required contents of a municipality's filing with COAH, and the entitlement of a party to transfer to the OAL. Hills Development v. Bernards Tp., 229 N.J. Super. 318, 551 A.2d 547 (App.Div. 1988).
*167 One of COAH's functions is to determine whether a municipality's plans provide an opportunity for affordable housing that is "realistic." Such a determination does not ordinarily include a ruling whether a proposed ordinance and developer's agreement satisfy substantive and procedural legal standards generally applicable to such municipal actions whether or not they are taken in a Mt. Laurel setting.
COAH's substantive certification determined only that Paramus's fair share plan and housing element provided a realistic opportunity for the construction of affordable housing. That was a factual determination, involving a prediction based on facts found. The certification did not purport to settle questions of a mayor's alleged conflict of interest or its effect on local legislation, of spot zoning, contract zoning, improper financing of offsite improvements, or the need for referral of a zoning amendment to the planning board.
COAH argues that plaintiffs had the opportunity to make their legal arguments as objectors before COAH, that COAH was competent to hear and decide them, and that plaintiffs' failure to appear and object before COAH was a failure to exhaust an administrative remedy which bars raising the arguments in the Law Division.
We disagree. There is no question but plaintiffs could have appeared as objectors before COAH. There is also no question but COAH has incidental jurisdiction to decide legal questions that necessarily arise in the course of directing and controlling its own proceedings. COAH's review and mediation procedures, however, are not formal or adversary, and are not designed to lead to rulings on legal questions that happen to relate to the subject matter. It would impede the mission of COAH if a party raising a related legal question could, on that basis alone, assert the right to an adversary evidentiary hearing before COAH or an OAL hearing of a contested case.
There is no reason to believe it is more expeditious to assign determination of related legal issues to COAH in proceedings *168 before it rather than to the Law Division in separate proceedings. The first alternative permits objectors to impede and distract COAH processes which are designed for mediation, and factual determinations.
The other alternative involves separate judicial proceedings and the danger of foot-dragging there. The Law Division, however, is the forum best qualified to deal with most of the kinds of legal questions that relate to municipal action but not to the direction and control of COAH proceedings. Judges have the necessary training and experience that COAH members and the legal staff may lack. In addition, some of the legal questions concerning the municipality's actions do not arise until COAH proceedings are completed. Also, COAH, unlike other state agencies like the State Department of Education, does not have an expressed statutory mission to hear and decide legal questions. See Sukin v. Northfield Bd. of Ed., 171 N.J. Super. 184, 408 A.2d 446 (App.Div. 1979). In all the circumstances, the Law Division should have primary responsibility to decide related legal questions like those presently contained in counts 1, 4, 6, 10, and the surviving portion of count 9 of the complaint. The judges entertaining such questions will be vigilant to suppress any efforts to turn Law Division proceedings into opportunities for collateral attacks on COAH's grant itself.
We are aware that this court ruled in Hills Development v. Bernards Tp., 229 N.J. Super. 318, 551 A.2d 547 (App.Div. 1988) on legal determinations made by COAH. Some of those determinations were required in order for COAH to control its own proceedings, and the issue of COAH's authority to rule on the others was not decided. This court had a reviewable record before it, and noted that the COAH proceeding, unlike the one in the present case, was on a transfer of the "entire complaint" from the Law Division.
COAH also argues that plaintiffs' only relief was by appeal of COAH's substantive certification, and not by action in *169 lieu of prerogative writs in the Law Division. They argue that plaintiffs' suit erodes the Appellate Division's exclusive jurisdiction to hear an appeal of a state agency decision, R. 2:2-3(a)(2), and that incidental legal questions ought to be gathered into one appeal. We disagree.
If plaintiffs' challenge were to COAH's grant of substantive certification, it would belong only in this court, even if the challenge focused on the propriety of COAH's procedures. See Van Dalen v. Washington Tp., 232 N.J. Super. 205, 556 A.2d 1247 (App.Div. 1989); Hills Development v. Bernards Tp., 229 N.J. Super. 318, 551 A.2d 547 (App.Div. 1988). We recently held that a COAH order denying substantive certification and transferring an exclusionary zoning case back to the Law Division was appealable to this court, but only upon leave granted. Fair Share Housing Center, Inc. v. Township of Cherry Hill, 242 N.J. Super. 76, 576 A.2d 24 (App.Div. 1990).
Plaintiffs' challenge, however, concerns legal matters related to COAH's proceedings but not decided there. Only if every related legal issue, including those ripening after COAH completed its work, had to be raised before COAH, would plaintiffs' failure to raise them there bar their Law Division suit. For reasons already stated, such a bar would not be appropriate.

III.
Defendants also argue that plaintiffs' action is too late. To the extent that it challenges the validity of the zoning amendments, it is not too late, because it was filed within the permitted 45 day period established by R. 4:69-6(a). To the extent that it challenges the validity of the Paramus  Westland agreement, it is not too late. Although the agreement was executed in 1987, its viability is completely dependent upon COAH's certification, which was granted in September 1988, and upon Paramus's zoning amendment, which was adopted in October 1988. Since plaintiffs timely attacked the ordinance, which was passed on the heels of the certification, no party was *170 induced to rely detrimentally on plaintiffs' failure to attack the agreement at an earlier time when, standing alone, it meant very little. Such an earlier attack would have left some issues untouched and still others not yet ripened into litigability. Although the validity of the agreement could have been challenged as soon as it was made, a plaintiff should not be penalized for declining to litigate prematurely and piecemeal. The extension provisions of R. 4:69-6(c) apply.
The six-year period of repose is a special res judicata bar, designed by the Supreme Court and accepted by the Legislature, against repeated challenges from various sources to the municipality's reviewed and certified plan to fulfill its Mt. Laurel obligations. It was not designed to bar timely prerogative writ challenges to the legality of any of the components of the plan.
The order of the Law Division is affirmed except that the seventh count of the complaint is dismissed. The matter is remanded to the Law Division for further proceedings.
NOTES
[1] The "housing element" refers to the housing plan element contained in the municipality's master plan. N.J.S.A. 40:55D-28b(3).
[2] The review and mediation process can also be triggered by an exclusionary zoning suit plaintiff in the circumstances outlined in N.J.S.A. 52:27D-316b.