250 N.J. Super. 256 (1991)
593 A.2d 1227
QUAD ENTERPRISES, PLAINTIFF-APPELLANT,
v.
BOROUGH OF PARAMUS AND NEW JERSEY COUNCIL ON AFFORDABLE HOUSING, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1990.
Decided July 17, 1991.
*257 Before Judges KING, LONG and R.S. COHEN.
Gary J. Chester argued the cause for appellant (Vaccaro and Curran, attorneys, Gary J. Chester on the brief).
*258 Frederic S. Kessler argued the cause for respondent Borough of Paramus (Clapp & Eisenberg, attorneys, Arnold K. Mytelka of counsel and Frederic S. Kessler on the brief).
Donald M. Palombi, Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (Robert J. Del Tufo, Attorney General, attorney, Michael R. Clancy, Assistant Attorney General, of counsel and Donald M. Palombi on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Some of the history of Paramus's halting progress toward fulfillment of its Mt. Laurel obligations can be found in Alexander's Department Stores of New Jersey, Inc. v. Borough of Paramus, 243 N.J. Super. 157, 578 A.2d 1241 (App.Div. 1990).[1] Part of the housing element and fair share plan which received COAH's 1988 substantive certification involved the Westland properties discussed in that opinion. We remanded the Alexander's action to the Law Division; it has proceeded independently of the present litigation.
The other major part of the plan approved by COAH, one we did not consider in Alexander's, located 703 units of affordable housing on the property of two active country clubs, Ridgewood and Arcola. Plaintiff Quad Enterprises objected to the inclusion of the country club land in the plan, and the exclusion of its own 56 vacant acres. Quad offered to build multiple housing that would include significant numbers of affordable units. It sought an OAL hearing on the question whether planning 703 units of affordable housing on the two country club parcels provided a realistic opportunity for its actual construction. *259 COAH declined to order such a hearing. Quad then commenced a prerogative writ action in the Law Division.
The first count of the complaint alleged that Quad wanted to build affordable housing on its land, but was prevented from doing so by the Paramus zoning ordinance; that Paramus engaged in a pattern of exclusionary zoning, and failed to provide its fair share of affordable housing, and that Quad was therefore entitled to a builder's remedy.
The second count added that Paramus sought COAH substantive certification of a plan to provide affordable housing; that Quad participated in the ensuing COAH mediation process, and objected to the plan proposed by the Borough; that the Borough never seriously considered Quad's objections and offers to build; and that COAH granted certification after denying Quad's demand that the matter be transferred to OAL as a contested matter, as required by N.J.S.A. 52:27D-315c. Quad sought a declaration that COAH's certification of the Borough plan was invalid for lack of an OAL hearing, and again demanded a builder's remedy.
On motions made by Paramus and COAH in the Law Division, the matter was ordered transferred to this court, pursuant to R. 1:13-4(a), and 2:2-3(a)(2), on the thesis that it was really an appeal from an action by COAH, a State agency.
Before us, the parties have addressed the questions (1) whether this action should be here or in the Law Division, (2) whether COAH was required to refer the matter to OAL for a contested case hearing, and (3) whether the amended Paramus zoning ordinance meets the Mt. Laurel test of providing a realistic opportunity for the construction of affordable housing.
The first question, the proper choice of forum in the Superior Court, is a difficult one, because the words of R. 2:2-3(a)(2), relating to appeals to this court of State agency decisions, stand in apparent conflict with N.J.S.A. 52:27D-316 and 317. We briefly examined the legislative scheme in Alexander's, 243 N.J. Super. at 163-164, 578 A.2d 1241. It appears to *260 permit, at least in some instances, Law Division actions challenging municipal enactments of zoning amendments designed to adopt and implement the COAH-certified plan.
We need not resolve the global problem here, because there is a dispositive issue relating to COAH procedures, which we can deal with on the COAH record before us. As we said in Alexander's, if plaintiff's challenge is to COAH's grant of substantive certification, it belongs only in this court, even if the challenge focuses on the propriety of COAH procedures. Id. at 169, 578 A.2d 1241; see Van Dalen v. Washington Tp., 232 N.J. Super. 205, 556 A.2d 1247 (App.Div. 1989), aff'd in part, rev'd in part, all on other grounds, 120 N.J. 234, 576 A.2d 819 (1990); Hills Dev. Co. v. Township of Bernards, 229 N.J. Super. 318, 551 A.2d 547 (App.Div. 1988). Where an objector to COAH certification focuses its attack on COAH's failure to transfer to the Office of Administrative Law as a contested case, that issue should be resolved in this court. Where that is one of many issues, the choice of proper forum is not so clear, but that is not the case here.
There are two reasons why an attack on COAH's failure to transfer to OAL should be resolved here. The first is the procedural rule requiring State agency appeals to be heard in the Appellate Division. The second is the practical problem of remedy if a trial court should determine that transfer to OAL should have occurred before substantive certification was granted. The trial court cannot invalidate the substantive certification, as we can, or remand to COAH, as we can. The trial court could only ignore COAH's certification as invalid, or downgrade it as faulty, and proceed to try an exclusionary zoning case without it. That seems contrary to the statutory scheme and institutionally very awkward.
The pivotal issue before COAH and this court is the role of lands owned by the two country clubs in fulfilling Paramus's Mt. Laurel obligations. Paramus's first 1987 housing element and fair share plan was rejected by COAH. It serves no useful *261 purpose to try to trace the progress of Paramus's proposals and COAH's responses on the way toward substantive certification. COAH's mediation and review procedures do not produce a readily reviewable record or lend themselves to easy reconstruction by a reviewing court. The setting is not an adversary one, at least in theory, and there is little effort to document what the players are doing and saying.
It is clear on the fragmentary record before us that a central issue in the early stages of mediation was whether there were vacant, developable lands owned by Arcola and Ridgewood Country Clubs which should be counted in determining the number of units of affordable housing Paramus would have to plan for. Counting the country clubs' acreage as vacant and developable, the number was 1,000 (by reason of the cap contained in N.J.A.C. 5:92-7.1(b)).[2] Without the country club acreage, the number was closer to 300. Paramus intended to satisfy its fair share obligation itself, by building almost 300 units, but it strongly objected to consideration of any golf course acreage. In a September 1987 letter to COAH, Paramus wrote:
It is important, at the outset, to place this matter in perspective. The COAH staff report calculates the Paramus fair share as 1,002 units. Of these units, 705  more than two thirds  are generated solely by the inclusion of the golf courses. However, the owners (i.e., the members) of these golf courses have made clear on numerous occasions that they will never develop their property. Thus, Paramus appears to be confronted with an impossible task of trying to place the entire 1,000 low and moderate income units on the remaining land which, by COAH's calculations, is suitable for fewer than 300!
* * * * * * * *
Thus, while we understand the Task Force has preliminarily accepted the staff position that all of the golf course acreage should be counted as vacant land, we ask that this decision be reconsidered. In the Fair Housing Act, the Legislature declared that "adjustments shall be made whenever ... [v]acant and developable land is not available in the municipality." N.J.S.A. 52:27D-307(c)(2)(f). *262 We submit that the golf course land is neither vacant nor developable. Land is not vacant when it has been developed for a specific purpose and continues to be used for that purpose. Land is not developable when its owners declare that it will never be developed.
At the end of the letter, Paramus suggested that "at the very least" COAH should count only about 60 of the golf courses' total of 350 acres in the survey of vacant land. That would have more than halved the 1,000 quota.
Four months later, in early 1988, Paramus ended its battle against counting the country club properties as vacant land for purposes of determining Paramus's quota; the country clubs also ended their battle and instead agreed to zoning amendments designed to fulfill Paramus's fair share by permitting the clubs to construct some 700 luxury housing units at 6.8 to the acre and affordable housing units at 22 to the acre on about 140 acres of "surplus" country club land. It would be "surplus", however, only after redesigning both of the golf courses and eliminating 9 of the 27 holes of one of them. Development would also require the clubs to convey conservation easements guaranteeing that the resulting golf courses would permanently remain open space.
On February 11, 1988, a COAH staff mediation report summarized the accommodations reached. Quad continued to object to the golf course plan as unrealistic and to the omission of its own vacant and developable property from the plan. Paramus did not concede that the entireties of both golf courses should be counted as vacant land, but took the position that if they were to count as vacant land for calculating its fair share, they should also count as land available to satisfy the fair share obligation thus created.
In its September 1988 resolution granting Substantive Certification, COAH said only this with regard to Quad's demand for an OAL hearing:
WHEREAS, certain issues were not resolved by mediation to the satisfaction of all parties, and COAH having received and reviewed the mediator's recommendations of these issues, contained in the mediator's report and COAH having *263 determined that these issues do not constitute a contested case, as defined in the Administrative Procedures Act, N.J.S.A. 52:14B-1 et seq.;

In October 1988, Paramus adopted the implementing zoning ordinance amendment. This litigation followed.
Where, as here, an objection is filed with COAH to a municipality's petition for substantive certification, COAH engages in "a mediation and review process...." N.J.S.A. 52:27D-315a. If the mediation is "successful," COAH issues a substantive certification if the statutory criteria are met.[3]N.J.S.A. 52:27D-315b. If mediation efforts are "unsuccessful," COAH transfers the matter to the Office of Administrative Law as a contested case under the Administrative Procedure Act. N.J.S.A. 52:27D-315c; 52:14B-1 et seq.
COAH has the authority to make the discretionary decision whether there are contested material issues of fact requiring an evidentiary hearing, and, thus, whether the case is "contested." In re Township of Warren, 247 N.J. Super. 146, 159-160, 588 A.2d 1227 (App.Div. 1991); Hills Dev. Co. v. Township of Bernards, 229 N.J. Super. 318, 340-341, 551 A.2d 547 (App.Div. 1988). Here, COAH decided that transfer to the OAL was not appropriate, but COAH did not say how it arrived at that decision, and the justification for it does not appear elsewhere in the record before us. COAH's regulations do not deal with the question other than to say that COAH can refer a matter to OAL "for adjudication as a contested case." N.J.A.C. 5:91-7.3(b).
There is an issue of fact that, on its face, appears to be material and contested. It is whether the rezoning of the property of two operating country clubs provides a realistic opportunity for the construction of 700 units of affordable *264 housing. It is a material issue because, if the 700 affordable units are just a pipedream, so is COAH's certification. It is a contested issue for two reasons. The first is that the redesign and development of the perimeter of these private clubs for 700 units of affordable housing and dedication of the rest as open space intuitively seem to be unlikely.[4] The second and more important reason is that Borough and country club officials have vigorously argued both sides of the issue at different times in the mediation process.
On the other hand, the Borough's appeal to symmetry is an appealing one. How can you complain, the Borough asks, that land is unavailable to build on if the proposed building is necessitated only by the increase in the municipal fair share created by including it in the vacant land survey?
There have been no proceedings, so far as we can tell, to afford COAH the opportunity to make an informed ruling on the contested material issue. Although we recognize COAH's desire to do its job in a non-adversarial non-confrontational setting, its determinations are subject to judicial review for reasonableness. That review can proceed only if some record exists, and its determinations can be affirmed as reasonable only if they are based on sufficient credible evidence in the record.
We remand to COAH for transmittal of the matter to OAL. In fairness to Paramus, the inquiry whether the inclusion of the country club acreage provides a realistic opportunity for affordable housing should be accompanied, if Paramus so chooses, by a hearing on the question whether country club lands should have been counted in the vacant land survey for the purposes of calculating the Borough's quota of affordable housing. It seems apparent that Paramus's concession to COAH on that *265 question was tied to the plan for construction on the country club lands. It would be fundamentally unfair to examine one side but not the other of what may be the same coin.
We are not sure of the proper outcome of a case where COAH ups a municipal fair share by counting truly unavailable land, and then permits the town to satisfy the obligation thus created by planning affordable housing on the same truly unavailable land. If that is what is happening, however, institutional candor requires that COAH and the courts acknowledge it, and openly deal with it.
We do not order that the OAL hearing also concern the availability and suitability of Quad's land. However, evidence as to that matter may be considered if it appears to illuminate the question whether the decision to rely on the country club lands is realistic and reasonable.
The Law Division action may be stayed or dismissed without prejudice.
NOTES
[1] Historians might want to start where Paramus started, in 1976. See Cedar Park Dev., Inc. v. Board of Adjustment, Borough of Paramus, A-4628-78T3 (App.Div. August 1, 1983). They would also find a great deal of information in Judge Petrella's thorough Law Division opinion in Howland Forest, Inc. v. Board of Adjustment, Borough of Paramus, L-30215-74 P.W. (Dec. 12, 1977).
[2] The 1,000 unit cap was invalidated as unauthorized by the Fair Housing Act in Calton Homes v. Council on Affordable Housing, 244 N.J. Super. 438, 446-453, 582 A.2d 1024 (App.Div. 1990).
[3] It is not clear what are the standards by which it is to be determined whether a mediation is "successful." Certainly it does not require unanimous support from all of the objectors. On the other hand, the core meaning of mediation is facilitating agreement. It is not the same thing as binding arbitration.
[4] Our intuitive reaction seems to have been shared by the Supreme Court in Fobe Associates v. Mayor and Council of Demarest, 74 N.J. 519, 524, 379 A.2d 31 (1977), where it treated an operating golf course in Demarest as "unavailable" for development.