BOROUGH OF MATAWAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MONMOUTH COUNTY BOARD OF TAXATION, TOWNSHIP OF MATAWAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND FREDERICK RAUBINGER, COMMISSIONER OF NEW JERSEY DEPARTMENT OF EDUCATION, DEFENDANTS-RESPONDENTS.

Argued February 19 and 20, 1968—Decided March 7, 1968.

*Mr. Clive S. Cummis* argued the cause for appellant (*Messrs. Cummis, Kent & Radin,* attorneys).

*Mr. Stephen G. Weiss,* Deputy Attorney General, argued the cause for respondents (*Mr. Arthur J. Sills,* Attorney General, and *Mr. Richard T. Schwartz,* attorneys).

PER CURIAM. The judgment is affirmed for the reasons expressed in the following portion of the opinion of Judge Simmill in the Law Division:

"This is an action in lieu of prerogative writ brought by the Borough of Matawan challenging defendants' interpretation of *N. J. S. A.* 18:8–17 (3) prior to its amendment in 1965, and challenging the constitutionality of *N. J. S. A.* 18:8–26. Both sides now move for summary judgment. Plaintiff seeks both a declaration that the State Commissioner of Education and the Monmouth County Board of Taxation are acting in violation of *N. J. S. A.* 18:8–17 (3) and a readjustment of the apportioned taxes between the Borough and the Township of Matawan. It is argued that because of this alleged illegal action plaintiff has been assessed for more than its share of taxes for the support of the regional school systems and, correspondingly, defendant, Township of Matawan, has been assessed for less than its share. Moreover, it is contended that the act by which regional school districts are created, *N. J. S. A.* 18:8–26, is unconstitutional; hence the regional school district in question is illegal and void.

"The Matawan Regional School District was created in 1961 by special election pursuant to *N. J. S. A.* 18:8–26 and consists of two municipalities, the Borough of Matawan and the Township of Matawan. The voters also determined that the revenue to be raised for the regional school district was to be apportioned upon the basis of average daily enrollment (hereafter referred to as ADE) of pupils from the constituent municipalities during the preceding year. The figure is obtained by dividing the number of days the school is open into the total days present and absent.

"It is of importance to note that the school year begins on July 1 and terminates on June 30 of the following calendar year. The chronological sequence of events begins with an election in February, held pursuant to *N. J. S. A.* 18:8–16, in which the voters are asked to approve the budget for the next school year beginning on July 1. After approval by the electorate, the amount is certified by the school district to the Monmouth County Board of Taxation on or before March 1 of each year in accordance with *N. J. S. A.* 54:4–45. The County Board of Taxation must apportion the figures

among the constituent municipalities; such apportionment in this case being based on the ADE of each constituent. All assessments must be filed by April 10, *N. J. S. A.* 54:4–52. The ADE figure, so critical to ascertaining apportionment figures, is supplied to the Board in March by the State Commission of Education.

"The ADE figure submitted by the Commissioner is the crux of this case. Because the figure is submitted in March of a school year not yet complete, the figure by necessity represents the ADE of the school year ending on the preceding June 30. Quite obviously in March, the school year in progress is not yet complete and the ADE figure for it is unavailable. For convenience and clarity the Court will refer to the measuring years as one, two and three. Year one represents the completed school year *from* which the Commissioner has derived the ADE. Year two represents the year *in* which the apportionment is made and year three represents the year *for* which the apportionment is made.

"Plaintiff has demonstrated that since 1961 the Township has been growing at a faster rate than the Borough. Thus, the argument is presented that according to the terms of *N. J. S. A.* 18:8–17 (3), the year two ADE figure should be used in order to more accurately reflect the actual enrollment of each constituent and, more important, to more equally distribute the burden of education costs, year two being the statutorily authorized 'preceding year.' Further plaintiff argues the fact that the ADE figures for year two are not available in March is of no consequence because they do subsequently become available in July or August and an adjustment could be made at that time. The Court is now called upon to determine whether the 'preceding year' standard established in *N. J. S. A.* 18:8–17 (3) has as its reference point, year two, the year in which the apportionment is determined, or year three, the year for which the apportionment is used.

"The statute in question was amended in 1965 and now provides that the apportionment shall be based on the num-

ber of pupils enrolled on the last day of September of 'current school year.' *N. J. S. A.* 18:8–17 (3) (1965). Thus the problem posed in the instant case has been removed prospectively.

"The defendants urge that plaintiff has failed to exhaust its administrative remedies and that, therefore, the present action should be dismissed. It is their contention that plaintiff must first either appeal to the Division of Tax Appeals as provided by *N. J. S. A.* 54:2–35 or to the Commissioner of Education as proved by *N. J. S. A.* 18:3–14 and *N. J. S. A.* 18:3–15. Under the former statute the Division of Tax Appeals is authorized to hear an appeal of any action or determination of a county board of taxation. The latter statute provides an appeal to the Commissioner in disputes arising under the school laws. A further appeal to the State Board is provided under *N. J. S. A.* 18:3–15.

"The general rule is propounded by *R. R.* 4:88–14, which states:

'Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted'

Ordinarily, administrative remedies must be exhausted before resort is had to the courts, but the exhaustion is neither jurisdictional nor absolute and may be departed from where, in the opinion of the court, the interest of justice so requires. *Waldor v. Untermann,* 10 *N. J. Super.* 188 (1951). This doctrine has been followed repeatedly. See, *e.g. Central R. R. of N. J. v. Neeld,* 26 *N. J.* 172 (1958), certification denied, 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed.* 2d 1371 (1958), *Deaney v. Linen Thread Co.,* 19 *N. J.* 578 (1955), *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952).

"When the issue to be decided is solely a matter of law, it appears that the doctrine of exhaustion of administrative remedies is not applicable. *Nolan v. Fitzpatrick,*

*supra, Wilbert v. DeCamp,* 72 *N. J. Super.* 60 (*App. Div.* 1962). The Supreme 'Court of New Jersey has promulgated further guidelines to aid in a determination of when the doctrine of exhaustion may be waived.

'However, we are not particularly concerned with the label or description placed on the issue but are concerned with underlying consideration such as the relative delay and expense, the necessity for taking evidence and making factual determination thereon, the nature of the agency and the extent of judgment, discretion and expertise involved, and such other pertinent factors. * * * as may fairly serve to aid in determining whether, on balance, the interests of justice dictate the extraordinary course of bypassing the administrative remedies made available by the Legislature.' *Roadway Express, Inc., v. Kingsley,* 37 *N. J.* 136, 141 (1962).

■ "With these factors in mind it is the opinion of this Court that jurisdiction should be retained. The instant case includes the interpretation of a statute and a constitutional question, matters for which the courts are uniquely suited. This is a problem in which further use of administrative expertise will be an idle gesture. Indeed the administrative body would be asked to declare illegal its own actions under the statute.

## I

"INTERPRETATION OF *N. J. S. A.* 18:8–17 (3).

"The central issue involving statutory interpretation is one of first impression in this jurisdiction. Its resolution, a determination of whether year one or two ADE figures are to be used, will prove to be more than a mere exercise in words and, indeed, because of the shifts in population from Borough to Township, will prove to be a statement of significant fiscal impact. By way of illustration, plaintiff estimates its monetary loss to be $47,000 for 1965-1966 if year one ADE figures are used as a basis for apportionment rather than year two. Additional losses are claimed by plaintiff due to the uninterrupted use of year one ADE figures by the County Board of Taxation since the creation of the regional school district in 1961.

"The ADE method of apportionment was first introduced in 1953 as an alternative to the already existing ratable method and was made available to all regional school districts in 1955 subject to approval by the electorate. See *Berkeley Heights Tp. v. Bd. of Education, etc.*, 23 *N. J.* 276, 283 (1957). There had been no change in the ADE provision of the statute, *N. J. S. A.* 18:8–17 (3), from 1955 until the amendment in 1965 which established the last school day of September of the current year, year two, as the measuring date of the ADE.

"Plaintiff takes the position that the interpretation of the preamendment statute by the administrative officials responsible for the statute's implementation is erroneous because it results in an inequity not originally intended by the Legislature. Literally read, plaintiff contends, the statute authorizes extraction of the ADE figures from the latest available date, that being the additional data available at the completion of year two, the current year, because 'preceding year' means the year before the year *for which* the funds are to be used.

■■ "The Court is unable to agree with this interpretation. To begin with the fact that plaintiff's construction would yield a more equitable result in this case is an unpersuasive argument and one that has no place in a case such as this. Defendants even concede that use of the later ADE figure would be fairer. However, it is the responsibility of this Court in construing a statute to determine what the Legislature intended rather than to apply a meaning which merely appears fairer as the particular statute is used in practice. If the statute works inequitably, it is up to the Legislature to correct the difficulty. 'The judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge's private view of what is just or sensible.' *Ridgefield Park v. Bergen Co. Bd. of Taxation,* 31 *N. J.* 420, 431 (1960).

■ "For an invaluable aid in ascertaining the legislative intent the Court looks to the 1965 amendment to *N. J. S. A.* 18:8–17 (3), which states:

'With respect to regional school districts for which the number of pupils enrolled on the last school day of September of the current school year of the constituent school districts is to be used as a basis for apportionment of amounts to be raised for annual or special appropriations for such school districts, the State Commissioner of Education shall certify to the County Board of Taxation, from the latest statistics then available, the number of resident public school pupils enrolled on the last day of September * * * until such time as the actual number of pupils enrolled on the last school day of September of the current school year * * * shall be available * * *'

An amendment to an act may be resorted to for discovery of legislative intent in the enactment amended. *Wallerstein v. Hartford Accident & Indemnity Co.*, 21 *N. J. Misc.* 378 (*Sup. Ct.* 1943). It is thus apparent that the Legislature, with an opportunity to eliminate an existing ambiguity, chose to establish the last school day of September, the current year, as the ADE date, and not some time later when figures for the entire year would become available. In considering this legislative clarification, it would seem that if such a strong policy for using the latest possible figures existed, the Legislature would have adopted an amendment implementing such a policy.

"Also of significance is the fact that the amendment uses the words 'current year' in describing the last school day of September. This substantiates plaintiff's position that 'preceding' in the pre-amendment version of *N. J. S. A.* 18:8–17 (3) refers to the year *preceding* the year in which the apportionment is made, *i. e.*, the current year.

██ "Resort to the 1965 amendment is not conclusive but definitely is something to be considered by the Court in this case which encompasses such a narrow area of the law. Statutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation. *Page v. Johnson*, 45 *N. J. Super.* 97 (*Ch. Div.* 1957). Also in enactment of amendments, the earlier statute on the same subject is generally presumed to have been within the knowledge and view of the Legislature, which is regarded as having adopted a new statute in light thereof and in reference

thereto. *City of Newark v. Rockford Furniture Co., 4 N. J. Super.* 205 *(App. Div.* 1949).

"Turning to the statute itself, it has been noted that the original enactment lasted ten years before amendment, during which time those responsible for its implementation used the ADE figures from year one, which defendants contend was correct. As early as 1827, in *Edwards Lessee v. Darox* [Darby], 12 *Wheat.* 205 [25] *U. S.* [205] [6 *L. Ed.* 603] (1827), interpretation of executive officers called upon to carry the law into effect is entitled to great weight. That decision has been followed wherever a statute is ambiguous and administrative construction has been uniform and long-continued. See note, 40 *Harvard L. Rev.* 469 (1926). Further, it is stated, if the Legislature does not interfere with the administrative conduct, there has been an implied recognition that the latter expresses legislative meaning. See also *Comment, 9 Wash. L. Rev.* 167 (1934). This rule has been cited with approval in the United States Supreme Court, in *Louisville and N. R. Co. v. United States,* 282 *U. S.* 740 [51 *S. Ct.* 297, 75 *L. Ed.* 672] (1931) as well as in this jurisdiction, most recently in *In re Keogh-Dwyer,* 45 *N. J.* 117 (1965) and *Pringle v. N. J. Dept. of Civil Service,* 45 *N. J.* 329 (1965). Accordingly, the ten year acquiescence of the Legislature with regard to changing *N. J. S. A.* 18:8-17 (3) will be construed as legislative acceptance of the interpretation placed on the enactment by the Department of Education.

"In *[Berkeley] Heights Tp. v. Bd. of Education, supra,* plaintiff, using the ratable method of apportionment under *N. J. S. A.* 18:8-17, contended that the term 'ratables' in the statute meant ratables based on local assessed valuation before equalization. This usage had been prior practice. However, a 1956 amendment to this portion of the statute, not applicable to the situation in the *Berkeley Heights* case, calls for use of a figure attained after equalization of the district aggregates, placing the responsibility on County Tax Bonds rather than regional school boards. Defendant, Union County

Tax Board, contended that the pre-amendment statute had been clarified, and thus should be construed in conformity with the definition provided in the amendment. The Supreme Court agreed and held that 'It is wholly reasonable to believe that the purpose of the latest enactments was to clarify the Legislature's position on the matter * * * (T)he same process may reveal what was previously intended but inarticulately expressed.' Prior practice of a few local officials, it was held, carries little weight. *Berkeley Heights Tp. v. Bd. of Education, supra,* at *p.* 282. The situation is definitely distinguishable when the ADE method is used because it is the State Commissioner of Education who acts under the statute rather than 'a few local officials', and it is the interpretation of this administrative officer upon which this Court places substantial weight.

"Plaintiff argues that when the apportionment is based on ratables, as in the *Berkeley Heights* case, *supra,* a later adjustment is required under *N. J. S. A.* 54:4–49 and 54:4–48. To be consistent plaintiff would read *N. J. S. A.* 18:8–17 (3) in *pari-materia* with the above adjustment statutes, and thus the apportionment between municipalities would have to be adjusted to reflect the latest figures — regardless of whether the ratable method or ADE method was used. It is sufficient to say that there is no authority for reading the two statutes in *pari-materia* and requiring adjustments when the ADE method is used. The ratable method and ADE method are two distinct methods of apportionment which the voters may select. *N. J. S. A.* 54:4–48 and 54:4–49 deal expressly with ratables. Without authority the Court is powerless to tie *N. J. S. A.* 18:8–17 (3) to these provisions and an attempt to do so would be repugnant to distinction between the two methods of apportionment.

"Finally, it may be noted that *N. J. S. A.* 18:10-29.50 defines ADE as 'The number of full-time pupils enrolled in a public school during a school year next preceding the date for calculation of aid under this act.' The statute qualifies this, however, by stating that another meaning may be ap-

plicable if context requires a different meaning. Therefore, little weight can be placed in this definition.

"With respect to the issue of whether year one or year two is the 'preceding year' with *N. J. S. A.* 18:8-17 (3) the Court is of the opinion that administrative interpretation is controlling especially in light of the 1965 amendment and that defendants' contentions must be sustained.

"* * *."

The question of the constitutionality of *N. J. S. A.* 18:8–26 is not raised in this Court and therefore we do not pass upon it.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN — 7.

*For reversal* — None.