181 N.J. Super. 394 (1981)
437 A.2d 909
TOWNSHIP OF BARNEGAT, A MUNICIPAL CORPORATION OF THE STATE OF N.J., PLAINTIFF-APPELLANT,
v.
DCA OF NEW JERSEY, INC., INTERNATIONAL FIDELITY INSURANCE COMPANY AND SAFECO INSURANCE COMPANY OF AMERICA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1981.
Decided October 26, 1981.
*395 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
William T. Hiering, Jr., argued the cause for appellant (Hiering, Gilmore & Monahan, attorneys).
Christopher J. Hanlon argued the cause for respondent (Giordano, Halleran & Crahay, attorneys; Martin J. Arbus on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This appeal arises as a result of application of certain procedures provided under the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. While there are sharply disputed issues of fact between the parties, the basic structure of their dispute is quite clear.
Defendant DCA of New Jersey, Inc. (hereinafter "DCA") tendered two bonds to plaintiff to guarantee that DCA would construct, install and complete certain improvements in connection *396 with subdivisions located within the plaintiff township.[1] One of the bonds was written in 1972 and the other was written in 1973.[2] The surety on one bond was defendant International Fidelity Insurance Company (hereinafter "International"). Defendant Safeco Insurance Company of America (hereinafter "Safeco") was the surety on the remaining bond. The improvements to be installed were quite substantial and included clearing, grading, paving, curbs, sidewalks, monuments, signs, manholes, headwalls, pipes, culverts, trees, planting, seeding, sewerage and water pipes. The International bond was for $594,950. The Safeco bond was for $968,133. On February 6, 1980 Eric Levin, vice-president of DCA, sent two letters to the clerk of plaintiff with copies sent to the municipal engineer. See N.J.S.A. 40:55D-53. The letters each referred to one of the bonds and recited that "all of the improvements covered by the above reference bond having been installed, release of the bond is hereby requested." Each letter recited that the request was made pursuant to the "Municipal Land Use Law, N.J.S. 40:55D et seq."
Plaintiff did not respond to DCA after receipt of the letters. From plaintiff's viewpoint this failure was unfortunate since it *397 was clearly the intention of DCA to trigger the provisions of N.J.S.A. 40:55D-53 d and e which provide:
d. Upon substantial completion of all required appurtenant utility improvements, and the connection of same to the public system, the obligor may notify the governing body in writing, by certified mail addressed in care of the municipal clerk of the completion or substantial completion of improvements and shall send a copy thereof to the municipal engineer. Thereupon the municipal engineer shall inspect all improvements of which such notice has been given and shall file a detailed report, in writing, with the governing body, indicating either approval, partial approval or rejection of such improvements with a statement of reasons for any rejection. The cost of the improvements as approved or rejected shall be set forth.
e. The governing body shall either approve, partially approve or reject the improvements, on the basis of the report of the municipal engineer and shall notify the obligor in writing, by certified mail, of the contents of said report and the action of said approving authority with relation thereto, not later than 65 days after receipt of the notice from the obligor of the completion of the improvements. Where partial approval is granted, the obligor shall be released from all liability pursuant to its performance guarantee, except for that portion adequately sufficient to secure provision of the improvements not yet approved; provided that 30% of the amount of the performance guarantee posted may be retained to ensure completion of all improvements. Failure of the governing body to send or provide such notification to the obligor within 65 days shall be deemed to constitute approval of the improvements and the obligor and surety, if any, shall be released from all liability pursuant to such performance guarantee for such improvements.
It will be noted, of course, that the aforesaid sections at least in some circumstances contemplate that the municipality respond within 65 days to the notice that the improvements have been completed or substantially completed. A failure to respond "shall be deemed to constitute approval of the improvements and the obligor and surety, if any, shall be released from all liability, pursuant to such performance guarantee for such improvements." Ibid. Not surprisingly, therefore, on April 22, 1980 DCA notified plaintiff, International and Safeco that the sureties were released from the bonds. The letters of April 22, 1980 caused plaintiff to take action. On or about April 29, 1980 plaintiff's attorney notified defendants that the bonds were not released. On May 23, 1980 plaintiff brought this action against DCA, International and Safeco. Plaintiff requested a declaratory judgment that both bonds were still in force, that the letters *398 of February 6, 1980 requesting releases were not in compliance with N.J.S.A. 40:55D-53 d and that the improvements guaranteed by the bonds were neither complete nor substantially complete.
After defendants were served with summonses and the complaint the case moved to a summary conclusion in the trial court. Plaintiff and defendants served cross-motions for summary judgment. Each was originally made returnable September 19, 1980. Plaintiff's motion seems not to have been supported by an affidavit filed with it.[3] But plaintiff had filed an affidavit of Charles H. Mackie, its municipal engineer, on May 23, 1980, the day it filed its complaint. This affidavit was available for consideration on the motion. The affidavit recited that Mackie had received the February 6, 1980 letters on or about February 8, 1980. He indicated that prior municipal engineers had performed the inspections on the subdivisions and that he had not been able to get their records. He stated that after he received the April 22, 1980 correspondence (announcing the discharge of the bonds) he inspected the projects. He found that there were "very substantial improvements [that] remain in regard to the projects. This is evident from the great amount of money it would now take to complete the improvements left incompleted." The cost to complete the work secured by the two bonds were, in the opinion of Mackie, $61,880 on the International bond and $217,300.75 on the Safeco bond.
Defendants' motion included an affidavit of Eric Levin, vice-president of DCA. His affidavit recounted the history of the filing of the bonds, the service of DCA's letters of February 6, 1980 and April 22, 1980 and the letter of the township attorney of April 29, 1980. He also indicated that he had reviewed Mackie's report and that he totally disagreed with it with respect to the estimate of the work to be completed, the quantities *399 necessary and the unit prices. He gave specific examples of the discrepancy between his figures and Mackie's. It is of interest that Levin's affidavit seems not to assert that the work had been completed or substantially completed.
The motions were originally postponed but were finally heard on October 24, 1980. The trial judge in an oral opinion decided that from the affidavits there was no evidence of bad faith on the part of defendants. He also determined that N.J.S.A. 40:55D-53 contemplated disputes as to whether the work had been substantially completed or completed. He felt that if the township, simply by asserting that the work had not been substantially completed, could deprive defendants of the deemed approval of the work after 65 days after service of defendants' notice that the work had been completed, the statute would have no point and would be canceled. In the circumstances, he accordingly granted defendants' motions for summary judgment. Of course, the judge did not find that the work had been completed or substantially completed. In view of his disposition of the case, such a finding would not have been germane. Further, the record before the judge containing Mackie's affidavit would have precluded such a finding on a summary judgment application. Indeed, as already noted, Levin's affidavit did not even assert that the work had been completed or substantially completed. On November 12, 1980 the judge signed an order granting defendants' motion for summary judgment. The order dismissed plaintiff's complaint and stated that defendants were released from all liability for improvements as required by the bonds. Plaintiff appeals from that final order.
The Supreme Court has recently reminded us that in construing statutes "language should be given its ordinary meaning absent specific intent to the contrary. Thus, we must first look at the evident wording of the statute to ascertain its plain meaning and intent." Renz v. Penn Central Corp., 87 N.J. 437, 440 (1981). We construe N.J.S.A. 40:55D-53 d and e in accordance with the directions of Renz.
*400 It is immediately evident that N.J.S.A. 40:55D-53 d specifically indicates that it is only upon completion or substantial completion of the improvements that the obligor may notify the municipality of their completion and thereby require an inspection and response. The statute does not say that notice may be given when the obligor believes that the improvements have been completed or substantially completed. Thus the plain meaning of the statute requires that the improvements in fact have been completed or substantially completed when notice is given to the municipality.
The requirement of inspection by the municipal engineer also contemplates that notice be given when the improvements in fact have been completed or substantially completed. The engineer is to inspect the improvements and file with the governing body a "detailed report" "indicating either approval, partial approval or rejection" of the improvements. Conspicuous by its absence is any suggestion that the engineer will report that the improvements are not complete. After receipt of the engineer's report the governing body "shall either approve, partially approve or reject the improvements" and notify the obligor of the content of the engineer's report and its determination. Once again, there is no explicit statement or implicit suggestion that the governing body might be finding that the improvements are incomplete.[4] We think that the reason the Legislature did not provide that the municipality notify the obligor that the improvements were incomplete is clear. The Legislature did not contemplate that in such circumstances the obligor would have notified the municipality that the improvements *401 had been completed.[5] Accordingly we conclude that the Law Division judge erred in dismissing plaintiff's complaint since the judge did not, and on the record before him could not, determine on a summary judgment proceeding that the improvements had been completed or substantially completed.
We are aware that the judge considered that unless he reached the result he did, the statute would be pointless. We also recognize that in appropriate cases the spirit of a statute must prevail over its literal terms if this should be necessary to effectuate the Legislature's intent. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 298 (1968); Loboda v. Clark Tp., 40 N.J. 424, 435 (1956). The judge concluded the statute would be pointless because the obligor could not get the advantage of an automatic release from the bond if the municipality simply *402 denied that the work had been completed or substantially completed. In such cases the failure of the municipality to act would be a springboard to controversy rather than a release of the obligor and surety.
We do not doubt that the broad interpretation of the Law Division judge would give greater scope to N.J.S.A. 40:55D-53 d and e than does our reading of these sections. Yet we cannot accept the position that a literal reading of the sections will defeat their purposes. Clearly, if the obligor correctly notifies the municipality that the improvements have been completed or substantially completed, and the municipality does not act within 65 days, the municipality's failure to act has the significant consequence of constituting an approval of the improvements and of releasing the obligor and surety "from all liability, pursuant to such performance guarantee for such improvements." N.J.S.A. 40:55D-53 e. The deemed approval thus has great impact on any future claim by the municipality that the obligor's performance was qualitatively defective. Such an effect is substantial. We see no reason to depart from a literal reading of the statute in a case where such an interpretation fully effectuates a significant legislative purpose.[6]
The judgment of November 12, 1980 is reversed. The matter is remanded to the Superior Court, Law Division, Ocean County, for further proceedings consistent with this opinion. Specifically the judge shall determine if, when the letters of February 6, 1980 were sent, the improvements had been completed or substantially completed. If the judge determines that as to either *403 or both bonds the work had been completed or substantially completed by that time, then the obligation of DCA and the surety shall be deemed released as to the particular bond or bonds as the case may be.[7] Otherwise the bond or bonds shall not be deemed affected by the failure of plaintiff to act within the 65 days. It shall not be germane to the judge's determination that the work may have been completed or substantially completed after February 6, 1980 because plaintiff, upon receipt of notice after such completion or substantial completion, was entitled to an opportunity to inspect and approve, partially approve or reject the improvements. Completion or substantial completion of the work after February 6, 1980 cannot validate the notice sent on that date. We do not retain jurisdiction.
NOTES
[1] In reality, the principal on the bonds was the Mayer Corporation. According to an affidavit of Eric Levin, vice-president of DCA, DCA is the successor in interest to Mayer. The parties have treated the bonds for purposes of this litigation on the basis that the obligor was DCA. Accordingly, we will consider DCA to be in that status. It is clear that the outcome of this appeal will not be changed by this treatment. We further note that two additional bonds had been tendered to plaintiff. The Law Division judge held that all four bonds were discharged. Plaintiff agrees that the improvements have been substantially completed in the areas covered by two of the bonds and thus it does not appeal the order discharging these two bonds. Accordingly, we will deal with this case as if only two bonds had been written.
[2] Neither party has suggested that the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., is not applicable to this action even though it became effective August 1, 1976. Thus, we assume that it is applicable and decide the case on that basis.
[3] Plaintiff had mistakenly filed a default against International. It did file an affidavit requesting that the default be vacated but the proceedings on that application are not germane here.
[4] Obviously, we do not suggest that the municipal engineer should ignore a request to inspect if he determines that the improvements are not substantially completed. Rather, he should report what he finds. Further, the municipality should, if it determines that the improvements are not substantially completed, notify the obligor within the 65-day period. We are, however, holding that N.J.S.A. 40:55D-53 d and e did not contemplate that an obligor would notify the municipality that the improvements had been substantially completed unless this was the fact.
[5] When N.J.S.A. 40:55D-53 was originally enacted it provided broadly for performance bonds for many types of improvements in connection with subdivisions, L. 1975, c. 291, § 41. N.J.S.A. 40:55D-53d then provided that "[w]hen all of the required improvements have been completed, the obligor shall ..." notify the governing body. By L. 1979, c. 216, § 17, the quoted language was deleted and the following substituted: "Upon substantial completion of all required appurtenant utility improvements, and the connection of same to the public system, the obligor may ..." notify the governing body in writing. As a result of this amendment it could be argued that even if the improvements are completed or substantially completed, the improvement bond will be deemed canceled only as to utility improvements if the municipality fails to act within 65 days of the notice of the obligor that the improvements have been completed or substantially completed. Here the bonds include items such as sidewalks and paving which ordinarily would not be considered utility improvements. Plaintiff asserts that such items have not been completed but plaintiff makes no argument in accordance with the suggestion we make here. Rather, plaintiff assumes that in an appropriate case the automatic approval provisions of N.J.S.A. 40:55D-53 e apply to all improvements. Thus, defendants have not briefed the issue raised here. Accordingly, we decide this case on the basis that the parties have presented it, that there is no distinction between utility improvements and other improvements. We think, however, that the interests of justice in this case involving a public entity require that plaintiff on remand be free to argue that even if the improvements were substantially completed or completed by February 6, 1980, any release of the bond should be limited to utility improvements. We do not pass on this question.
[6] Plaintiff suggests that as a minimum it is entitled to a plenary hearing on the question of whether the notices were sent in good faith. Undoubtedly under no possible interpretation of the statute could defendants obtain a release if the letters of completion were sent at a time when the obligor actually knew the improvements were not at least substantially completed. See Brighton, Inc. v. Colonial Bank, 176 N.J. Super. 101 (App.Div. 1980), aff'd 86 N.J. 259 (1981). But we do not reach this issue as the result we reach obviously would preclude discharge if the improvements were not substantially completed regardless of defendants' good faith vel non.
[7] It is possible that the release will be limited to utility improvements depending upon whether plaintiff makes such argument and if so the trial judge's disposition of the question.