295 N.J. Super. 421 (1996)
685 A.2d 84
SOUTHPORT DEVELOPMENT GROUP, INC. A NEW JERSEY CORPORATION AND CLUB DEVELOPMENT, INC., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
TOWNSHIP OF WALL, TOWNSHIP COMMITTEE, THE AFFORDABLE HOUSING TRUST FUND, AND THE WALL TOWNSHIP LAND USE OFFICER, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided August 16, 1996.
*425 Douglas J. Gatta, for plaintiffs (Abrams, Gatta, Falvo & Sevrin, attorneys).
Jeffrey R. Surenian, for defendants (Lomell, Muccifori, Adler, Ravaschiere, Amabile & Pehlivanian, attorneys).
HAYSER, J.T.C., temporarily assigned.
Plaintiffs bring this action seeking a determination as to the validity of Wall Township Ordinance No. 34-1987, hereinafter denoted as the "development fees ordinance," and if the ordinance is found to be invalid, plaintiffs further seek reimbursement for the fees actually paid under the voided enactment.
Essential facts are not in dispute.
Plaintiff Southport Development Group, Inc. is the owner of certain property denoted as Lot 3 of Block 352 of the Wall Township Tax Map, consisting of 3.65+ acres. Plaintiff Club Development Group, Inc. is the owner of certain property denoted as Lot 9 of Block 273 of the Wall Township Tax Map, consisting of 1.63 acres.
On September 3, 1986, plaintiffs, or their predecessor in title in at least the case of plaintiff Club Development Group, Inc., were granted use variances by the Township's Zoning Board of Adjustment to construct multi-family developments. At that time, plaintiffs' properties were zoned B-2 and R-30, respectively. Plaintiffs *426 received approval to construct townhouses in lieu of the permitted uses.
Among other conditions placed upon the approvals, was the requirement that 20% of the multi-family housing constructed by each plaintiff meet the requirements of low and moderate income housing as proposed in the defendant Township of Wall's Mt. Lourel fair share plan.[1] Alternatively, the condition provided that plaintiffs could make a cash contribution in lieu of constructing the required Mt. Laurel units if the Township adopted a development fees ordinance for this purpose. This condition in their approvals, voluntary or not, was never challenged, effectively making plaintiffs Mt. Laurel developers, indirectly, if not directly.
On December 9, 1987, Township Ordinance No. 34-1987, the development fees ordinance, was adopted. Plaintiffs did not challenge that ordinance before the present litigation. Plaintiffs, moreover, never formally challenged the imposition of the fees after the date they argue they were "imposed" on June 22, 1988, by letter of the Township's land use officer. Plaintiffs' Motion Brief, page 12. Fee payments were apparently made as early as April 11, 1989. Brief, supra, Exhibit B.
After a series of court hearings over a number of years, for which public notice was provided, defendant Township's fair share plan was approved in the Judgment of Repose entered on September 24, 1990. The development fees ordinance was an integral part of the fair share plan, designed to provide funding in meeting the Township's net fair share obligation through rehabilitation of existing housing stock and the transfer of a maximum of 50% of its *427 net share obligation to assist other municipalities under regional development agreements.
Plaintiffs commenced the present action by filing a complaint in lieu of prerogative writs on April 17, 1991, relying, in part, upon the Supreme Court's decision in Holmdel Builders Association v. Township of Holmdel, (Holmdel), 121 N.J. 550, 583 A.2d 277 (1990), decided December 13, 1990.
On June 24, 1992, an earlier trial court judge considered the parties' cross-motions for summary judgment. In a decision issued September 2, 1992, the earlier trial court decided, among other matters, that the time bar rule of R. 4:69-6(a) did not preclude the present challenge to the development fees ordinance, because plaintiffs' cause of action accrued only with the Holmdel decision; nor was this same rule to be applied to the Judgment of Repose in "the interest of sound justice," pursuant to R. 4:69-6(c). However, the court also determined that the unchallenged variances that were granted, were not tainted under the principles set forth in Nunziato v. Edgewater Planning Board, 225 N.J. Super. 124, 541 A.2d 1105 (App.Div. 1988).[2]
Finally, the court addressed the central issue presented in the motions, i.e. the validity of the development fees ordinance. Plaintiffs, apparently, argued that the ordinance need not necessarily be invalidated per se, but that they should only be required to pay what other developers paid under the Judgment of Repose, or as might be permitted under Council on Affordable Housing (COAH) regulations. The court determined, however, that under the Holmdel decision, the validity of the Wall development fees ordinance should be determined by COAH, once recently adopted *428 regulations had withstood judicial scrutiny.[3] Nevertheless, the court decided this was to occur only after the court made further findings as to the voluntary nature of the fee payments in this case by plaintiffs, the treatment of other developers, what "density bonuses," if any, were received by plaintiffs under their variance approvals, and the effect of the Judgment of Repose.
Notwithstanding the earlier trial court's decision as to the summary judgment motions, the parties have filed new motions for summary judgment.[4] Plaintiffs contend that under Di Misa, they are entitled to reimbursement of all development fees paid during the "transitional period," i.e. December 13, 1990, when Holmdel was decided, and January 21, 1992, when COAH'S development fees regulations became effective; and for transfer to COAH as to a determination for the fees paid before December 13, 1990. Defendants bring a cross motion for dismissal of the complaint under the Holmdel and Di Misa decisions.
With this background, the court will address the issues raised by the parties' present motions.

A. The "Renewed" Motions for Summary Judgment and the "Law of the Case."
As indicated, plaintiffs moved before the earlier trial judge in 1992 for a refund predicated upon the misapplication of the development fees ordinance to them, or, in the alternative, that the matter should have been referred to COAH for a determination as to any refund that they would be entitled to receive. In *429 contrast, defendants argued, in their cross motion, that the Holmdel decision, relied upon by plaintiffs, was not controlling under the facts of this case. They argued that the ordinance had been applied appropriately, COAH's position was to accept "voluntary" fee arrangements and plaintiffs had agreed to the Mt. Laurel options governing their variance approvals. Finally, they argued that the ordinance was part of the comprehensive review and approval undertaken by Judge Serpentelli as reflected in the Judgment of Repose.
The court, essentially, decided earlier the entire matter should be transferred to COAH, once its regulations were in place, but only after the court engaged in further fact finding. Apparently, the parties felt the court could decide more, at least as to the validity of the development fees ordinance, particularly in view of the earlier court's decision not only to stay transfer of the matter to COAH, but also to engage in further fact finding. Their argument has not dimmed over the passage of time.
Normally, a renewal of a motion for summary judgment, in whole or in part, even when the order is interlocutory in nature, as when the motion is denied, is not favored, particularly when brought before another trial judge, barring exceptional circumstances. Cineas v. Mammone, 270 N.J. Super. 200, 207-208, 636 A.2d 1071 (App.Div. 1994).
However, a number of things have changed since the earlier trial court's decision in 1992. The relevant COAH regulations are now fully effective, and, more importantly, due to the fortuitous, perhaps, delay for the parties in the further court fact finding, Di Misa has been decided and must be considered for its possible impact upon the matters presented.
Closely related to the policy of not encouraging the renewal of summary judgment motions before different judges of co-ordinate jurisdiction, is the doctrine of the "law of the case." The "law of the case" doctrine, grounded upon the principle that relitigation of an issue should be discouraged, if possible, requires *430 judges to respect un-reversed decisions made during the trial as to questions of law. State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985). However, the doctrine is discretionary, and the court is never irrevocably bound before its final decision; and the doctrine should be applied flexibly to serve the interests of justice, "even if this means re-litigating a prior ruling before final judgment." Id. at 205, 495 A.2d 76.
Moreover, there are a number of exceptions to the doctrine. These exceptions include the presence of new controlling authority, clear error in the earlier decision, the presence of an intervening or retroactive change in the law, or where the earlier decision was either ambiguous or uncertain. See generally Sisler v. Gannett Co., Inc., 222 N.J. Super. 153, 159-160, 536 A.2d 299 (App.Div. 1987). The parties, in bringing their motions, have raised, by necessity, one or more of these exceptions. However, for purposes of this decision, the court will focus upon three: claimed ambiguity or uncertainty in the earlier decision, claimed error in the earlier decision and a change in the decisional law.

B. The Earlier Trial Court Decision on the Merits
At one point in its decision the earlier trial court determined that the validity of the ordinance and any possible refund of fees paid thereunder was to be decided by COAH after transfer. Given the arguments presented by the parties, it is unclear whether the ordinance's effect would be as applied only to these particular plaintiffs.
More importantly, the court was retaining the matter for fact finding as to, among other things, the impact and effect of the Judgment of Repose. Since the court had already decided that COAH should decide the matter under its promulgated regulations, it is, at the least, unclear as to what further role the repose *431 judgment could or would play in that determination.[5]
Finally, if the trial court was to make further factual findings as to the voluntary nature of the fee payments, the presence or not of "density" bonuses and how other developers were treated under the development fee ordinance, all central issues to determining the validity of the ordinance, what was left for COAH to do in determining the validity of the ordinance?
The parties can provide the court with no answers to resolve these matters. Thus, the court feels it is obligated to review the earlier determination in finally concluding this matter, which finds further support in the parties' renewed motions.

B1. The Holmdel and Di Misa Decisions
Plaintiffs argue that the Holmdel decision requires the issue of the validity of assessing Mt. Laurel development fees, whether mandatory or voluntary, to be decided by COAH under its regulations before such fees can be charged. In addition, plaintiffs maintain that Holmdel does not distinguish between those development fee ordinances that have been submitted to COAH for review as part of a substantive compliance process and those which were the subject of review in an exclusionary zoning lawsuit culminating in an earlier judgment of repose. Plaintiffs further argue that, at least to the extent of reviewing and approving such an ordinance, a court lacks jurisdiction, although this does not otherwise disturb a judgment of repose. Finally, plaintiffs indicate that Di Misa, as a further clarification of the issue, requires the conclusion that the court order the refund of all fees assessed and collected by the defendant Township during the "transition period," i.e. December 19, 1990 and January 21, 1992, and that only the issue as to the fees paid before December 19, 1990 should *432 be transferred to COAH for resolution. In the alternative, but yet still relying upon the claimed priority of the COAH regulations, plaintiffs argue that under N.J.A.C. 5:93-8.12, (1) they cannot be liable for any fees, since they obtained development approvals in 1986, prior to the "imposition" of the development fees ordinance,[6] and have not sought a major change in the approvals, or (2) the defendant Township may not, in any event, retain any development fees collected prior to December 13, 1990 (i.e. the date of the Holmdel decision) since they sought no "major change" subsequent to their 1986 approvals.[7]
Defendants argue, to the contrary, that the Holmdel decision has been misapplied under the facts of this case, and that COAH does not intend its regulations to interfere with a court's exercised jurisdiction and discretion in granting repose and promoting, concurrent with COAH, affordable housing goals. In addition, defendants maintain that plaintiffs must accept the burdens with the benefits they acquired under their 1986 development approvals, and that Di Misa is not relevant under the facts of this case.

Conclusions of Law
Whether viewed as either lacking clarity or erroneous, the court has concluded that the earlier decision of the trial court as to the relevancy of the Holmdel decision under the facts of this case must be reviewed in the "interests of justice." Moreover, the earlier findings regarding the complete transfer of the matter to *433 COAH also require review as a result of the subsequent Di Misa decision.[8]
It is important to understand the factual setting of the Holmdel decision. Like the present case, Holmdel was not exclusionary zoning litigation. Unlike the present case, however, it was brought by clearly non Mt. Laurel developers or their associations, i.e. commercial and non-inclusionary residential developers. Finally, and most importantly, unlike the present case, there was no issue concerning the relationship and priority between a judgment of repose and a substantive compliance proceeding through COAH.
In Holmdel, "COAH had expressly approved the housing elements and fair-share plans of the defendant municipalities, although in granting substantive certification to the municipalities in that case, COAH did not rule on the development fee ordinances, *434 concluding that the ordinances as such were `not required to implement the fair share plan.'" Id. at 579, 583 A.2d 277.
The failure of developing municipalities to provide a constitutionally required realistic opportunity for the development of low and moderate income housing, Southern Burlington County NAACP v. Mount Laurel Township, 67 N.J. 151, 336 A.2d 713 (1975), cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (Mt. Laurel I), led the Supreme Court to impose an affirmative obligation on every municipality to provide its fair share of affordable housing, enforced through an exclusionary zoning lawsuit and its builder's remedy. Southern Burlington County NAACP v. Mount Laurel Township, 92 N.J. 158, 456 A.2d 390 (1983) (Mt. Laurel II).
The Legislature's response to this important issue was finally realized in the enactment of the Fair Housing Act (Act) in 1985. N.J.S.A. 52:27D-301 to 329. This legislation acknowledged the court's continued role in achieving Mt. Laurel compliance through seeking approval of a housing element and fair share plan by petitioning COAH or the court, N.J.S.A. 52:27D-313, and by permitting and not acquiring transfer to COAH of pending Mt. Laurel litigation matters. N.J.S.A. 52:27D-316. Subsequently, the Supreme Court upheld the constitutionality of the Act. Hills Dev. Co. v. Bernards Township, 103 N.J. 1, 25, 510 A.2d 621 (1986).[9] Defendant Wall Township chose not to transfer its exclusionary *435 zoning litigation to COAH, which it was free to do, since the matter was pending at the time the Act became effective.
In Mt. Laurel II, the Supreme Court cited mandatory set-asides as among the devices to utilize in achieving this important public interest housing goal, while stressing that "municipalities and trial courts are encouraged to create other devices and methods for meeting fair share obligations." Id. at 265-266, 456 A.2d 390. In Holmdel, the Court concluded that "development fees are the functional equivalent of mandatory set-asides" and "such measures do not offend the zoning laws or the police powers." Id. at 573, 583 A.2d 277.
Thus, the Court in Holmdel focused on the role of a development fees ordinance in the compliance process and concluded that "each ordinance has a direct and material bearing on the municipality's effort to meet its fair-share affordable-housing obligation," and the ordinance is "subject to review and certification ... as a constituent part of the housing-element plan." Id. at 579, 583 A.2d 277.[10]
Nothing in the Holmdel decision suggests the Court no longer recognized the traditional role that courts have played in the Mt. Laurel compliance process, while still acknowledging COAH's "unique" role "as the administrative regulator in the field of *436 affordable housing." Id. at 576-577, 583 A.2d 277. Furthermore, where it would be expected that future ordinances or those of municipalities utilizing COAH's substantial compliance procedures would be submitted for review under now existing COAH regulations, nothing in the Holmdel decision suggests that previous court reviews of this "constituent part of the housing-element plan" culminating in a repose judgment, require or permit that judgment to be voided, modified or vacated for that reason, when, at the time of repose, no such regulations existed.[11]
The Court's decision in Holmdel was a directive to municipalities and COAH that those seeking substantial certification must submit development fee ordinances as a "constituent part" of the approval process under rules COAH must promulgate to assure the goals intended under the Act. The fact is that the development fee ordinances involved in Holmdel were not reviewed and approved by anyone with jurisdiction to assure compliance with the Act, its goals and purposes.[12]
*437 COAH's response to Holmdel is appropriate to consider in understanding the role that a repose judgment might play in the resolution of the development fee issue.
In its promulgated regulations in response to Holmdel, COAH stated, that "... a municipality may only collect and spend development fees through participation in the Council's substantive certification process or through a comprehensive review designed to achieve a judgment of repose." [emphasis supplied]. N.J.A.C. 5:92-18.1(B). Moreover, N.J.A.C. 5:92-18.1(C) permits COAH to review a development fee ordinance "upon the request of the court with jurisdiction in an exclusionary zoning lawsuit" while the same rule states that normally "the rules that follow shall govern those municipalities that petition for substantive certification and urban aid cities." [emphasis supplied].[13]
A judgment of repose is subject to the same grounds for relief as other judgments under R. 4:50-1. Putting aside the need to make a timely application for relief, equitable principles constitute the guide for resolution. Shammas v. Shammas, 9 N.J. 321, 327-328, 88 A.2d 204 (1952). Relief from a judgment is extraordinary, requiring a showing of exceptional circumstances. Baumann v. Marinaro 95 N.J. 380, 393, 471 A.2d 395 (1984). A mere showing of error in the proceedings resulting in the entry of judgment will not entitle one to relief from the judgment. Last v. Audubon Park Assoc., 227 N.J. Super. 602, 606-608, 548 A.2d 236 (App.Div. 1988), certif. den., 114 N.J. 491, 555 A.2d 613 (1989).
*438 Policy considerations strongly dictate that the concept of void judgments be restricted and that unappealable civil judgments not be dealt with as void except where there has been a plain usurpation of power. State v. American Can Co., 42 N.J. 32, 38, 198 A.2d 753 (1964). A mere change in decisional law will not normally disturb the finality of a judgment in the absence of a plaintiff's demonstrating extreme hardship and clear equity in his favor. Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 121, 193 A.2d 151 (App.Div. 1963). Even gross errors committed by a court in reaching a decision do not necessarily render the court's judgment or order void. Hendricks v. A.J. Ross Co., 232 N.J. Super. 243, 248 (App.Div. 1989), citing In re Whitney-Forbes, Inc., 770 F.2d 692, 696 (7th Cir.1985).
In the instant matter, without even considering the absence of a timely challenge to the repose judgment, plaintiffs' claim, in effect a collateral attack upon at least one "component" of the judgment, is that the imposition of development fees without benefit of COAH review and approval is void, in whole or in part.[14]
A review of the documents and testimony involving approximately five years of proceedings before Judge Serpentelli in the earlier Cove Industries exclusionary zoning litigation provided to the court, evidences an extensive and exhaustive treatment of the subject leading up to the Judgment of Repose. Integral to that process and a fundamental component of the fair share plan was the consideration of the development fees ordinance.[15]
*439 Plaintiffs argue that excision of the ordinance from the approved fair share plan would have no impact upon the judgment, despite the fact that the funds generated by this funding mechanism would substantially meet the defendant Township's net fair share allocation. Moreover, plaintiffs' argument that the Mt. Laurel judge simply "rubber stamped" the ordinance does a disservice not only to this distinguished jurist, whose expertise in such matters is well acknowledged, but does an equal disservice to the extensive process participated in by both inclusionary and non-inclusionary developers over the extended review period.[16]
As initially designated, in effect, Mt. Laurel developers, plaintiffs would have had a significant interest in these earlier court proceedings. The record is clear that extensive public notice was given, interested persons or objectors had the right to fully participate and the plaintiffs chose not to avail themselves of that opportunity.
A judgment of repose must have the same effect as substantial certification through COAH, and plaintiffs should not be permitted to challenge the court's approval of the ordinance now any more than if they had chosen not to participate in a similar process through COAH. See Alexander's v. Paramus Bor., 243 N.J. Super. 157, 578 A.2d 1241 (App.Div. 1990).
Under these circumstances, plaintiffs' claims pale before the overriding public policy concern to achieve realistic housing opportunities for low and moderate income individuals, as required by constitutional mandate.

C. Wall Township Ordinance No. 34-1987
Plaintiffs raise a number of issues as to the development fees ordinance, itself, beyond the failure to enact and implement it in *440 accordance with enabling COAH administrative regulations. They argue that the ordinance is vague, unclear, impermissibly retroactive and, by its terms, inapplicable to them, since they received no "density bonuses" by virtue of their 1986 variance approvals. Plaintiffs also argue that the ordinance has been applied in a discriminating or selective manner.
Given the nature of the claims, it is necessary to consider the basis for defendants' earlier determination that plaintiffs' development projects were subject to the fee payment requirements of the ordinance.
Under the resolutions granting them use variances on September 3, 1986, a Mt. Laurel condition was not only imposed upon plaintiffs, but the board of adjustment also found that the very participation by plaintiffs in the Township's Mt. Laurel undertaking, through on-site construction of low and moderate income housing or monetary contributions toward same, provided the only special reasons, meeting the positive criteria, to permit the granting of the very use variances plaintiffs sought.[17] As discussed earlier, the variances have never been challenged in any respect. Their granting with the Mt. Laurel conditions remain fully effective.
Moreover, plaintiff Southport Development Group, Inc., through its principal, William Govel, obtained its use variance to construct 30 townhouses on 3.65 acres in the B-2 zone, contiguous to the R-10 single family residential zone. The balance of the 6.34 acre site, or 2.69 acres which fronted on Route 35, would be reserved *441 for future commercial development. Old Mill Realty, Inc., predecessor of plaintiff, Club Development Group, received approval to construct 15 townhouses upon a 1.63 acre site located in the R-30 zone, which permitted a maximum density of one unit per 30,000 square foot lot.
It is difficult to understand how plaintiffs can argue that they did not receive compensatory benefits, if not density bonuses, under their uncontested variance approvals as described above. A variance permitting residential development where none was previously permitted establishes both a residential density base and benefit bonus for the property. This is true, even if the ordinance is viewed as mandatory, but not confiscatory. It is also difficult to understand how they can maintain that they did not agree to the unassailed Mt. Laurel condition of their approvals.
The eventual development fees ordinance, the potential reality of which was acknowledged in an unchallenged condition of the variance approvals, was expressly made retroactive to July 1, 1986. See Twiss v. State Dept. of Treasury, Office of Financial Management, 124 N.J. 461, 467, 591 A.2d 913 (1991). However, it is argued that its relevant provision, Sec. 15-5.18b2, is not only not applicable to plaintiffs because they received no "density bonuses", but also because it is vague and unclear as to whether the reference to a payment in "the sum of $10,000.00 for each such unit constructed," refers to a payment only as to Mt. Laurel housing units not constructed or applies to all units actually constructed in the proposed development projects. In the case of these plaintiffs, it could have made a difference between a payment of $90,000 and $450,000.
A number of rules are to be considered in construing the meaning of legislation. When an enactment is clear on its face, a court need not look beyond the terms of the enactment to determine the legislative intent. State v. Churchdale Leasing, Inc., 115 N.J. 83, 557 A.2d 277 (1989). The insertion of words in an enactment is a power to be exercised by a court with unusual caution. Klink v. Township Council of Monroe Tp., 181 N.J. Super. *442 25, 30, 436 A.2d 545 (App.Div. 1981). Moreover, the legislative body will be presumed not to have used meaningless language, e.g., words of relation normally relate back to the nearest antecedent. State v. Wean, 86 N.J. Super. 283, 288-289, 206 A.2d 765 (App.Div. 1965). Furthermore, the meaning that an administrative official responsible for its implementation ascribes to the enactment over a period of usage is persuasive of the legislative intent. Borough of Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 300, 240 A.2d 8 (1968). Finally, in construing the language of an ordinance, courts apply the same rules of judicial construction as they apply when construing statutes. A.M.N., Inc. of New Jersey v. Tp. Rent Leveling Bd., 93 N.J. 518, 524-525, 461 A.2d 1138 (1983).
In applying these rules of construction to the above cited section of the development fees ordinance, which is presumptively valid, it is clear that since no Mt. Laurel units would be constructed if the fee was paid as an alternative, the reference to "each such unit constructed" can only refer to the development units constructed. Moreover, nothing in the defendants' interpretation of the ordinance as it applies to these plaintiffs suggests a different conclusion. Borough of Matawan, supra, 51 N.J. at 300, 240 A.2d 8. All variance developers were charged and paid this fee.
Finally, in accepting the Mt. Laurel condition of their variance approvals, plaintiffs agreed, as recited in their approval resolutions, to the "option of constructing the units or making the cash contribution as may be provided for by that ordinance." Resolution of Approval dated September 3, 1996. [emphasis supplied]. Plaintiffs, having achieved their desired variance approvals, in lieu of constructing affordable housing, challenged in 1991 the ordinance that gave them the option to make cash payments. Their approvals, if not the ordinance itself, required plaintiffs either to construct Mt. Laurel housing or make an in-lieu payment, and that is beyond dispute. The clearly retroactive *443 ordinance implemented the condition that they accepted even to receive their approvals.
However, plaintiffs also argue that the development fees ordinance has been enforced in an arbitrary or selective manner, as applied to them, in that it is claimed some developers were not charged the $10,000 per housing unit provided for in the ordinance.
An ordinance must operate uniformly upon all who are similarly situated and discrimination is a fatal defect in an ordinance. Moreover, an ordinance lacking requisite uniformity cannot be sustained on the theory that officials will hopefully enforce it fairly. See generally 5 McQuillan, Municipal Corporations §§ 18.11 and .12 (3rd ed.).
Plaintiffs cannot argue that as a necessary part of their variance approval processes there should have been negotiations as to the fees to be paid, which would have tainted those proceedings. As the court stated in Nunziato:
The intolerable spectacle of the board haggling with an applicant over money too strongly suggests that variances are up for sale. This cannot be countenanced. Proceedings in which this has occurred are immediately tainted, and must be set aside.
[Nunziato, 225 N.J. Super. at 133-134, 541 A.2d 1105.]
Moreover, the Judgment of Repose envisions that depending upon circumstances, all developers might not pay the same fees. Paragraph N, Judgment of Repose. See also N.J.A.C. 5:92-8.12.
No fewer than nine developers, including the variance developers, were charged and paid the $10,000 per unit fee. Other developers who were charged and paid different fees, all reviewed and approved by the Mt. Laurel judge in amendments to the Judgment of Repose, were predicated upon the legitimate concerns that Mt. Laurel housing would not be built in the face of foreclosure actions or such other factors as excessive development costs for the subject properties.
*444 Plaintiffs all too readily accepted their Mt. Laurel obligation under their 1986 variance approvals. They never challenged the conditions imposed. Sec. 15-5.18b2 of Township Ordinance 34-1987 establishes the fee to be paid, with plaintiffs having chosen that option rather than building Mt. Laurel units under their approvals. The fact that plaintiffs might not have finally achieved the full benefit of their developmental goals, through no fault of defendants, is not a basis for a belated challenge, in effect, to an earlier obligation they chose to accept in seeking and receiving their earlier approvals. The ordinance provision must be read to achieve what obligations they earlier assumed, when all things were possible in the expansive 1980's.
Plaintiffs' motion for summary judgment is denied. Defendants' cross-motion is granted.[18]
Counsel for the defendants shall prepare and submit a proposed Order pursuant to R. 4:42-1(c).
NOTES
[1] At that time, defendant Township was immersed in an exclusionary zoning lawsuit before the Honorable Eugene D. Serpentelli, A.J.S.C., encaptioned "Cove Industries Ltd., Inc. v. Wall Township, Docket No. L-51262-84 PW." Plaintiffs never sought to intervene in these proceedings. Following the adoption of the Fair Housing Act on July 2, 1985, the Township did not elect to transfer this matter to the Council on Affordable Housing (COAH), but decided to seek repose under the court's continued jurisdiction. N.J.S.A. 52:27D-313 and 316.
[2] Interestingly, the earlier trial court held that the variances granted, "called for the construction of Mount Laurel units and gave the developer the option of paying an in lieu development fee upon the enactment of the requisite ordinance. There was never any negotiation as to the fee and it is apparent there was no haggling over the development fee." (emphasis supplied) Summary Judgment decision of September 2, 1992, page 18.
[3] COAH's development fees regulations were sustained In the Matter of Appeal of Adoption of N.J.A.C. 5:91-15.1 and Amendments to N.J.A.C. 5:92-1.1 et seq. (Docket Nos. A-3324-91T3, A-3326-91T3 and A-23327-91T3) decided July 7, 1993.
[4] The court had placed this matter on the inactive list on February 7, 1995, having earlier scheduled the matter for final fact finding, pending the Appellate Division's decision in Frank Di Misa, et al v. The Township of Holmdel, et al, Docket No. A-5486-92T, (Di Misa), argued February 14, 1995 and decided April 13, 1995. Thereafter, the matter was reactivated and the present summary judgment motions were filed.
[5] At oral argument, counsel for plaintiffs suggested this decision to engage in additional fact finding might have been based upon only a desire to determine how developers, under the repose judgment, were treated under the development fees ordinance. In any event, the parties could not shed any light as to the earlier trial court's actual motivation and intent.
[6] It is noted that development fees were "imposed" under Township Ordinance No. 34-1987, which was facially retroactive to July 1, 1986, prior to the date of plaintiffs' approvals. As discussed earlier, this ordinance was never challenged until the present litigation in any respect. Moreover, it has a presumption of validity. Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 447, 416 A.2d 840 (1980).
[7] The cited regulation was in effect at the time the earlier motions were argued, but, apparently, the plaintiffs have concluded that they should not be precluded from making this argument at this time.
[8] The court will not re-examine the issue of the time bar rule under R. 4:69-6 as it might apply to the granting of the 1986 variance approvals, the adoption of the development fees ordinance in 1987 or the judgment of repose entered in 1990. However, a number of comments are deemed appropriate.

A timely application, previously, to the board or court to remove the Mt. Laurel conditions of plaintiffs' approvals would certainly have raised a question, if not a challenge, that the approvals might have been earlier denied, legitimately or not, requiring a remand to the board after excision for a new determination on the merits of the applications. See Berninger v. Board of Adjustment of Midland Park, 254 N.J. Super. 401, 408-411, 603 A.2d 954 (App.Div. 1991), aff'd o.b. 127 N.J. 226, 603 A.2d 946 (1992).
Additionally, in deciding it might relax the time bar rule as to the challenge to the ordinance or judgment of repose under R. 4:69-6(c) in "the interest of justice," the earlier trial court's decision does not evidence the balancing required between plaintiffs' claimed financial hardship and injury and the compelling public interest in achieving the desired housing goals under the Judgment of Repose. No reason, moreover, is given for waiting to challenge the development fees ordinance until April 17, 1991, after Holmdel was decided December 13, 1990. R. 4:69-6(a) applies, whether challenging the procedural or substantive aspects of an ordinance.
Finally, the timing of the Holmdel decision had nothing to do with plaintiffs' claimed earlier objections to the ambiguity and arbitrariness of the ordinance and the claimed arbitrary differentiation in how it was being enforced, which could have been addressed in an earlier, timely challenge.
[9] Moreover, in Hills Dev. Co. in discussing the effect of the Act upon judicial proceedings, the Court stated:

Where no final judgment has been entered, we believe the Council [COAH] is not bound by any orders entered in the matter, all of them being provisional and subject to change.... The administrative remedies, and the administrative approach to that subject, may be significantly different from the court's.... While the Legislature has left a continued role under the Act for the judiciary in Mt. Laurel matters, any such proceedings before a court should conform wherever possible to the decisions, criteria, and guidelines of the Council.
[Id. at 59, 63, 510 A.2d 621 [emphasis supplied]].
As indicated earlier, at the time the final Judgment of Repose was entered in this matter on September 24, 1990, and even at the time of the first amendment in December 1990, no "decisions, criteria, and guidelines" of COAH as to development fee ordinances were in existence.
[10] Since there is no allegation that the development fees ordinance in issue is either confiscatory or results in an inadequate return of investment, the court need not necessarily consider whether "compensatory benefits" are required, even if the ordinance is deemed mandatory. Moreover, plaintiffs' acceptance of their status as potential Mt. Laurel developers as a condition of their unchallenged variance approvals does not support compulsion, even without considering the optional payments permitted to them. Finally, "compensatory benefits" would include, but not be limited to whether a "density bonus" was realized.
[11] Plaintiffs cite Alexander's v. Paramus Bor., 243 N.J. Super. 157, 578 A.2d 1241 (App.Div. 1990) for the proposition that a judgment of repose "was not designed to bar timely prerogative writ challenges to the legality of any of the components of the plan." Id. at 170, 578 A.2d 1241. Assuming, arguendo, that the instant action is "timely," the court in Alexander's declined to "decide whether plaintiffs were entitled to appeal COAH's grant of substantive certification after declining to participate in any agency processes." Id. at 165, 578 A.2d 1241. The "challenges" the plaintiffs were permitted to pursue were as to traditional prerogative writ issues that "do not directly challenge any decision made by COAH." Id. at 166, 578 A.2d 1241.

Moreover, while the Court in Holmdel determined that such ordinances be considered as an essential element in the compliance process, minimally, it also required regulating standards be established to guide municipalities seeking substantial certification under COAH.
[12] The Holmdel Court, interestingly, found that the development fees ordinances in question were not ultra vires acts in a primary sense, but rather represented an irregular exercise of a statutory power requiring "curative" action through COAH rule-making. Id. at 579, 583 A.2d 277; see also, Frank A. Greek v. South Brunswick Tp., 257 N.J. Super. 94, 104-105, 607 A.2d 1359 (App.Div.), certif. den. 130 N.J. 602, 617 A.2d 1223 (1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993).
[13] Regulatory history of the agency charged with administering the subject matter under statute or a court directive can be helpful in resolving the issue. If deference is given to an administrative agency's interpretation and implementation of a statute, Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212, 584 A.2d 784 (1991), there is no reason for a different rule in interpreting a court decision, which interpretation is later approved by the court. See note 3, supra. A review of the comments and responses concerning the promulgation of COAH's development fees regulations presented to the court, clearly indicates that the agency recognized the court's jurisdiction in deciding whether a municipality can impose a development fee by virtue of such exclusionary zoning litigation. See 24 N.J.R. 235-245.
[14] Like the present case and Holmdel. Di Misa was a non-exclusionary zoning case. It built upon the Holmdel decision in determining the circumstances and time periods where a non-inclusionary developer could receive a refund for development fees not sanctioned by COAH in the municipality's substantial compliance process, or thereafter upon remand.
[15] See, for example, Master's Report on the Compliance of Wall Township, Monmouth County with Mount Laurel II: Fair Share, Sites and Mechanisms (Review of Housing Trust/Optional Optimal Density Bonus Program) dated March 1, 1988.
[16] In Hills Dev. Co. v. Bernards Tp., 103 N.J. 1, 510 A.2d 621, (1986) the Supreme Court cited the "substantial contributions" and "innovative refinement of techniques for the process of litigation" by Judge Serpentelli, one of the three originally appointed statewide Mt. Laurel II judges, and for the resolution and judgments entered in this area that required "great intelligence, dedication, independence, and courage." Id. at 64-65, 510 A.2d 621.
[17] It is beyond dispute that the provision of affordable housing for low and moderate income persons is an absolute essential in promoting the general welfare through local land use requirements. See Southern Burlington County NAACP, 92 N.J. at 179, 456 A.2d 390. See also as to the provision of housing for those in need inherently promoting the purposes of N.J.S.A. 40:55D-2a and justifying a use variance under N.J.S.A. 40:55D-70d, DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 267 A.2d 31 (1970); see also Homes of Hope, Inc. v. Zoning Bd. of Adj., 236 N.J. Super. 584, 587-589, 566 A.2d 575 (Law Div. 1989).
[18] In view of the need to make the additional findings required under the earlier trial court's interlocutory decision, as well as reach conclusions as to the motions in question, it was necessary to convert these proceedings, into what, in effect, has become a summary action pursuant to R. 4:67-1(b), to resolve any genuine issues of fact. R. 4:46-3(b) and R. 4:67-5.